# Exhibit AA

S. REP. 94-75, S. Rep. No. 75, 94TH Cong., 1ST Sess. 1975, 1975 U.S.C.C.A.N. 179, 1975 WL 12347 (Leg.Hist.)

**\*\*179** P.L. 94-29, SECURITIES ACTS AMENDMENTS OF 1975

Senate Report (Banking, Housing and Urban Affairs Committee) No. 94-75,

Apr. 14, 1975 (To accompany S. 249)

House Report (Interstate and Foreign Commerce Committee) No. 94-123,

Apr. 7, 1975 (To accompany H.R. 4111)

House Conference Report No. 94-229,

May 19, 1975 (To accompany S. 249)

Cong. Record Vol. 121 (1975)

DATES OF CONSIDERATION AND PASSAGE

Senate April 17, May 20, 1975

House April 24, May 22, 1975

The Senate bill was passed in lieu of the House bill. The Senate Report and the House Conference Report are set out.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED
MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

SENATE REPORT NO. 94-75

Apr. 14, 1975

The Committee on Banking, Housing and Urban Affairs, to which was referred S. 249 (to amend the Securities Exchange Act of 1934, and for other purposes) having considered the same, reports favorably upon S. 249 as amended and recommends without objection that the bill do pass.

**\*1** INTRODUCTION

S. 249, the Securities Acts Amendments of 1975, consolidates five bills: S. 470, S. 2058, S. 2519, S. 2474, and S. 2234 considered during the 93d Congress. The first four of these bills passed the Senate and extensive hearings were held on the fifth.

The genesis of this legislation is the Securities Industry Study Report of the Subcommittee on Securities (S. Doc. No. 93-13, 93d Cong., 1st Sess. 1973). This report grew out of an extensive 18-month study. Its major recommendations, embodied in S. 249, point to a fundamental reform of the economic and regulatory structure of the securities markets and the securities industry.

**\*\*180** S. 249 was introduced by Senators Williams, Brooke, and Tower on January 17, 1975, and referred to the Committee on Banking. Housing and Urban Affairs. The Subcommittee on Securities held hearings on S. 249 on February 19, 20, and 21, 1975. On April 11, 1975, the Committee on Banking, Housing and Urban Affairs met in open executive session and ordered S. 249, as amended, to be report to the Senate.

A. NATIONAL MARKET SYSTEM AND SELF-REGULATORY ORGANIZATIONS

Fundamental changes have occurred over the past forty years in the manner in which securities are traded, the role played in the securities markets by institutional investors, the structure of the national and international economy, and the capabilities and availability of communications and data processing equipment. Yet, despite these changes, the Committee found that the organized securities markets continue to operate by and large as they did when the Securities Exchange Act of 1934 (the 'Exchange Act') was adopted. Rather than responding to changing investor needs and striving for more efficient ways to perform their essential functions, the principal stock exchanges and the majority of established securities firms appear to have resisted industry modernization and to have been unable or unwilling to respond promptly and effectively to radically altered economic

C. ELIMINATION OF UNNECESSARY REGULATORY RESTRICTIONS

In the Committee's view the fundamental goals of a national market system include (1) providing an investor or his broker with the ability to be able to determine, at any given time, where a particular transaction can be effected at the most favorable price and (2) creating an incentive for multiple market makers to deal in depth on a continuous basis. In other words, in the national market system, investors should be able to obtain the best execution of their orders and be assured that because of open competition among market makers the total market for each security is as liquid and orderly as the characteristics of that security warrant.

To achieve the objectives of a national market system, the private sector, under the supervision of the SEC, will be called upon to develop and operate sophisticated communication and data processing facilities. But the substantial investment that these facilities will require **191 would be wasted if brokers were prevented by restrictive rules and practices from using them to search out the best price for their customers or if dealers were prevented or hindered by unnecessary or inappropriate regulatory requirements or limitations from engaging in market making activities. The Committee therefore believes that the first order or priority in creating a national market system is to *13 break down the unnecessary regulatory restrictions which now impede contact between brokers and market makers and which restrain competition among markets and market makers.

As the Subcommittee on Securities concluded in its Securities Industry Study, the ability of individual firms as well as the various exchange and over-the-counter markets to compete with one another will be a critical element in the successful functioning of the national market system. Unfortunately, because of excessive and unnecessary regulatory restraints, competition in the securities industry has not been as vigorous and as effective in advancing the public interest as it could be. The Committee concluded, however, that rather than amending the Exchange Act to eliminate particular, enumerated barriers to competition, the most effective way to foster competition would be to charge the Commission with an explicit obligation to eliminate all present and future competitive restraints that cannot be justified by the purposes of the Exchange Act. Following this pattern, various sections of S. 249 would direct the Commission to remove existing burdens on competition and to refrain from imposing, or permitting to be imposed, any new regulatory burden on competition 'not necessary or appropriate in furtherance of the purposes' of the Exchange Act.

This explicit obligation to balance, against other regulatory criteria and considerations, the competitive implications of self-regulatory and Commission action should not be viewed as requiring the Commission to justify that such actions be the least anti-competitive manner of achieving a regulatory objective. Rather, the Commission's obligation is to weigh competitive impact in reaching regulatory conclusions. The manner in which it does so is to be subjected to judicial scrutiny upon review in the same fashion as are other Commission determinations, with no less deference to the Commission's expertise than is the case in other matters subject to its jurisdiction.

Thus, Sections 6(b)(8), 19(b) and 19(c) of the Exchange Act would obligate the Commission to review existing and proposed rules of the self-regulatory organizations and to abrogate any present rule, or to disapprove any proposed rule, having the effect of a competitive restraint it finds to be neither necessary nor appropriate in furtherance of a legitimate regulatory objective. Section 19(e) would empower the Commission to review disciplinary actions of the self-regulatory organizations and to set any such action aside if it finds such action imposes an undue burden on competition. Similarly, Section 19(f) would authorize the Commission to review quasi-adjudicatory actions of such organizations and would require it to set aside any such action which the Commission finds imposes a burden on competition determined by the Commission to be neither necessary nor appropriate in furtherance of the purposes of the Exchange Act. Further, Section 23(a) would require the Commission to evaluate its own regulatory **192 proposals in light of the fundamental national economic policy of furthering competition and would prohibit it from promulgating any rule which the Commission determines will impose a burden on competition not necessary or appropriate to achieve the purposes of the Exchange Act. Under all of these Sections, the Commission's responsibility would be to balance the perceived anti-competitive effects of the regulatory policy or decision at issue against the purposes *14 of the Exchange Act that would be advanced thereby and the costs of doing so. Competition would not thereby become paramount