# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  | § |  |
|---|---|---|
| ERIK DAVIDSON, *et al.*, | § |  |
|  | § |  |
| Plaintiffs, | § |  |
|  | § | Civil Action No. 6:24-cv-00197-ADA |
| v. | § |  |
|  | § |  |
| GARY GENSLER, in his official capacity | § |  |
| As Chairman of the U.S. Securities and | § |  |
| Exchange Commission, *et al.*, | § |  |
|  | § |  |
| Defendants. | § |  |

### UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* ANDREW N. VOLLMER OF THE MERCATUS CENTER IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION MOTION AND <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Pursuant to Local Rule CV-7(b), proposed *Amicus Curiae*, Andrew N. Vollmer of the Mercatus Center at George Mason University ("Movant"), asks that the Court grant leave for the filing of his amicus brief, attached as Exhibit A. Movant requested and received consent from counsel to Plaintiffs and Defendants to the filing of the brief.

As further detailed in his brief, the Movant was Deputy General Counsel of the Securities and Exchange Commission ("SEC"), taught securities regulation courses at the University of Virginia School of Law, and was a partner in the securities enforcement practice of Wilmer Cutler Pickering Hale and Dorr LLP. He is now a research scholar with the Mercatus Center at George Mason University.

The purpose of the *Amicus* brief is to supplement the positions of the parties on the authority of the SEC to use the statute for the national market system ("NMS") (15 U.S.C. § 78k-1) to order the creation of the Consolidated Audit Trail. The brief provides a broader perspective on

1

2

the context of the statutes discussed by the parties.  Accordingly, the *Amicus* brief will be helpful

to the Court as it considers the questions presented in this lawsuit.

Movant therefore respectfully asks that the Court grant leave for the filing of the attached

*Amicus* brief.

August 22, 2024

Respectfully submitted,

**GRAY REED**

By: *Chris Davis*

Chris Davis
Texas Bar No. 24050483
Angela L. Brown
Texas Bar No. 24034533
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Tel:   (469) 320-6125
          (469) 320-6225
Email: cdavis@grayreed.com
          abrown@grayreed.com

Attorneys for *Amicus Curiae*
Andrew N. Vollmer of the Mercatus Center at
George Mason University

2

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |  |
|---|---|---|
| ERIK DAVIDSON, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 6:24-cv-00197-ADA |
| GARY GENSLER, in his official capacity As Chairman of the U.S. Securities and Exchange Commission, *et al.*, | § § § § § | |
| Defendants. | § § | |

**BRIEF OF *AMICUS CURIAE* ANDREW N. VOLLMER OF THE MERCATUS CENTER IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION MOTION AND IN <u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

*Amicus Curiae*, Andrew Vollmer of the Mercatus Center at George Mason University ("*Amicus*"), supports Plaintiffs' request for preliminary and final relief to set aside the creation of the Consolidated Audit Trail (the "CAT") by the Securities and Exchange Commission ("SEC") and opposes Defendants' motion to dismiss. As this brief explains, *Amicus* agrees that the SEC used a statutory authority that did not permit it to order the CAT.

### STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

*Amicus* was Deputy General Counsel at the SEC from 2006 to 2009 and taught securities regulation as Professor of Law, General Faculty, at the University of Virginia School of Law from 2014 to 2019. *Amicus* for many years was a partner in the securities enforcement practice

---

[1] All parties consent to the filing of this brief. No party's counsel authored this brief in whole or part, and no party or party's counsel made a monetary contribution to fund preparation or submission of this brief.

4884-9701-2186.2

of Wilmer Cutler Pickering Hale and Dorr LLP.  He is currently a research scholar with the

Mercatus Center at George Mason University.[2]

Amicus has spent decades interpreting, enforcing, teaching, and writing about the federal

securities laws.  He has an interest in the SEC regulating capital markets efficiently and

remaining within its statutory authority to administer the securities laws.

## ARGUMENT

The SEC  ordered the creation of the CAT based on the agency's authority to facilitate

the establishment of a national market system for securities ("NMS").  That was an error because

the SEC's purposes in creating the CAT did not conform with the findings and objectives for an

NMS that Congress included in the statute.  As with earlier audit trails, the SEC created the CAT

for regulatory and enforcement purposes and not to meet the NMS objectives of helping

securities traders find the best prices and executions.

In addition, Defendants' brief in support of the motion to dismiss was not faithful to the

record of the CAT when it argued that the SEC used authority under Section 17 of the Securities

Exchange Act of 1934 ("Exchange Act") as a basis for the CAT.  The rulemaking power in

Section 17 on document retention and examination was not the source of the analysis or

reasoning for adopting the CAT, even though the SEC included Section 17 in a list of

authorizing statutes.

## I.       The SEC's basis and purpose for ordering the CAT

The SEC predicated the CAT on its authority to develop an NMS, which is in Section

11A of the Exchange Act and is described in the next section of this brief.  The SEC adopted the

CAT as "an NMS plan filed pursuant to Rule 608 of Regulation NMS."  Consolidated Audit

---

[2]     *Amicus* submits this brief in his capacity as a scholar at the Mercatus Center, but the views in the brief are his only and not necessarily of any of the institutions mentioned above.

Trail, 77 Fed. Reg. 45722, 45741 (Aug. 1, 2012) (Adopting Release).  The SEC adopted

Regulation NMS in 2005 in furtherance of its statutory obligation under Section 11A.

Regulation NMS, 70 Fed. Reg. 37496, 37497 (Jun. 29, 2005).  Rule 608 was an NMS rule[3]

When ordering the creation of the CAT, the SEC said the purpose was to facilitate regulatory

oversight and enforcement functions of the SEC and the self-regulatory organizations ("SROs").

*See id* 77 Fed. Reg. at 45722-23, 45726.  The CAT was to "improve the ability of the SROs and

the Commission to perform their regulatory functions" and address limitations on their ability to

conduct "market surveillance, investigation and enforcement activities, and market

reconstruction and analysis."[4]

As this brief will now explain those stated purposes of the CAT are not part of the

objectives of the NMS.  The SEC therefore could not use Section 11A as authority for the CAT.

## II.     national market system

Exchange Act Section 11A governs the establishment of an NMS.  15 U.S.C. § 78k-1.  It

grants the SEC authority to act on specific congressional findings and carry out specific statutory

objectives to facilitate that goal.  *Id.* § 78k-1(a)(2).  Congress added Section 11A as part of many

reforms in the Securities Acts Amendments of 1975 to eliminate fixed brokerage commissions

and improve the performance of the SEC, stock exchanges, and the securities markets.[5]

---

[3]      Regulation NMS renumbered Exchange Act Rule 11Aa3-2 to be Rule 608.  Adopting Release 37570.  The SEC said Rule 11Aa3-2 was promulgated under section 11A.  Order Pursuant to Section 11A of the Securities Exchange Act of 1934 and Rule 11Aa3-2(f) Thereunder Extending a *de minimis* Exemption for Transactions in Certain Exchange-Traded Funds from the Trade-Through Provisions of the Intermarket Trading System, 69 Fed. Reg. 71445, 71445 n.2 (Dec. 9, 2004).

[4]      77 Fed. Reg. at 45726-27; *see also id.* at 45730-33; 88 Fed. Reg. 62628, 62673 (Sept. 12, 2023) (Order Approving an Amendment to the NMS Plan Governing the Consolidated Audit Trail (attempting to justify the CAT as part of the national market system because an improved enforcement capability contributes to investor protection).

[5]      Pub. L. No. 94-29, 89 Stat. 97 (Jun. 4, 1975).  Chapter 12 of Joel Seligman's magisterial history of the SEC provides extensive background on the 1975 amendments.  *See, e.g.*, Joel Seligman, THE TRANSFORMATION OF WALL STREET 496 (3d ed. 2003) ("In enacting the 1975 amendments, Congress was most concerned about preventing the type of error losses associated with the 1967-1970 back-office crisis and narrowing price spreads by enhancing market-maker competition.").

The introduction to Section 11A expressed Congress's findings and objectives for establishing an NMS. The goals were more efficient and effective market operations, economically efficient execution of securities transactions, fair competition among securities trading markets, the ability for trades to be executed in the best markets, and wide availability of information on quotations and transactions. Congress wanted to link all markets with communication and data processing methods to contribute to the best execution of investor orders. *Id.* § 78k-1(a)(1).

The legislative history of Section 11A confirms that the objective was better prices and execution of trades for investors. A conference committee largely adopted the findings and objectives in a Senate bill and stated the conferees' intent that a "national market system evolve through the interplay of competitive forces as unnecessary regulatory restrictions are removed." H.R. Rep. No. 94-229, at 92 (1975). The Senate report for the relevant Senate bill said a key goal of developing an NMS was best execution of investor trades. One of the paramount objectives was "the centralization of all buying and selling interest so that each investor will have the opportunity for the best possible execution of his order, regardless of where in the system it originates." S. Rep. No. 94-75, at 7 (1975).

The SEC properly construed Congress's aims for an NMS when taking actions *other than* ordering the CAT. When adopting Regulation NMS, the SEC stated, in relevant part:

> The NMS is premised on promoting fair competition among individual markets, while at the same time assuring that all of these markets are linked together, through facilities and rules, in a unified system that promotes interaction among the orders of buyers and sellers in a particular NMS stock. The NMS thereby incorporates two distinct types of competition—competition among individual markets and competition among individual orders—that together contribute to efficient markets. Vigorous competition among markets promotes more efficient and innovative trading services, while integrated competition among orders promotes more efficient pricing of individual stocks for all types of orders, large

4884-9701-2186.2

and small.  Together, they produce markets that offer the greatest benefits for investors and listed companies.

70 Fed. Reg. 37496, 37498-99 (Jun. 29, 2005).

The Congressional findings and objectives for an NMS did *not* include facilitating the oversight or enforcement functions of the SEC or the SROs.  Rather, the purpose of the NMS was to lower the costs of securities trading, increase the ability of investors and market-makers to discover prices, and make trading among the markets easier.  It was *not* to make the job of the SEC and SROs easier.  Section 11A certainly afforded no ground for the SEC to order government access to personal identifying information for investor trades.  The CAT therefore did not fall within the SEC's authority to write rules for an NMS.

**III.     Section 17 on document retention and examination as a basis for the CAT**

In its brief, Defendants concoct a revisionist history of the CAT.  The SEC argues that the CAT was based on the books and records and examination provisions in Exchange Act Section 17(a)-(b) (15 U.S.C. § 78q(a)-(b)).  (*See* Doc. 39 at 27-28).   The SEC also claims that in the 1975 legislation Congress "made landmark amendments" to reaffirm Section 17,  (*Id.* at 6).  It further claims that earlier audit trails were based on Section 17.  (*Id.* at 26-27).  These statements are not correct.  In fact, Defendants' brief is rife with misinterpretations and misdirection about the securities laws.

In 1975, Congress did not set out to reaffirm Section 17.  Instead, it amended Section 17 to add *new* types of regulated parties—such as transfer agents, clearing agencies, and municipal securities dealers—to the list of entities that needed to keep records and could be subject to examinations.  The 1975 amendments *did not* alter the substance of the existing document retention and examination obligations of exchanges or broker-dealers.  Instead, because of the expansion of the list of regulated persons required to keep records, it added provisions on the

4884-9701-2186.2

coordination of exams by the SEC and banking authorities. *See* S. Rep. No. 94-75, at 119, 219-20 (1975). The amendment of Section 17 is *separate* from the addition of Section 11A.

In the Adopting Release, the SEC did not discuss its rulemaking authority under Section 17(a) as a justification for the CAT. It stated unequivocally that the CAT was "an NMS plan filed pursuant to Rule 608 of Regulation NMS." 77 Fed. Reg. at 45741. The SEC never examined or analyzed the rulemaking text in Section 17(a) to determine whether it applied to permit the CAT. In fact, not until many pages into the CAT Adopting Release does the SEC refer to the obligations of regulated parties under Section 17. *See, e.g., id.* at 45784. And even then, the SEC does not connect its order of the CAT to the rulemaking authority in Section 17. *Id.* In fact, the SEC expressly distinguishes its authority under Regulation NMS for the CAT from books and records obligations under Section 17. *See id.* at 45758, 45772. It did so even though the Adopting Release included Section 17 in the list of many provisions given as authority for the final CAT rule. *Id.* at 45808.

The SEC's claim that the approval of earlier audit trails was based on Section 17 is also inaccurate. In the CAT Adopting Release, the SEC discussed the origins of earlier audit trails—especially those for FINRA (then the NASD) and the New York Stock Exchange. 77 Fed. Reg. at 45728. The legal basis was *not* the SEC's authority over an NMS or the Section 17 duty of SROs to keep records and make them available for SEC examinations.

The NASD and NYSE instituted the audit trails to resolve SEC enforcement actions asserting that the SROs were not able to reconstruct market activity because they could not locate or retrieve important trading records. The legal basis for the audit trail requirement was the Section 15A duties of the SROs to enforce their own rules (15 U.S.C. § 78*o*-3(b)(2)) and to prevent, detect, and punish fraudulent and manipulative acts and practices (15 U.S.C. § 78*o*-

8

3(b)(6)).  *See, e.g.*, Order Relating to the Creation of an Order Audit Trail System, 63 Fed. Reg. 12559, 12560, 12566-67 (Mar. 13, 1998) (NASD).  And the audit trails *did not have personal information about customers*.  *Id.* at 12562.

The establishment of audit trails is different from quotation and transaction reports under Regulation NMS and therefore different from the communications systems linking markets that Congress wanted securities information processors to provide for an NMS.  *See* H.R. Rep. No. 94-229 (1975) (conference report); 77 Fed. Reg. at 45735, 45761 n.418.  The SEC did not describe the CAT as an NMS method to communicate quotations and transactions for the efficient execution of investor trading.  *See* 77 Fed. Reg. at 45722-23.

## CONCLUSION

In creating the CAT, the SEC exceeded the NMS authority granted by Congress. The SEC has taken a statute aimed at making the securities trading systems better and cheaper for investors and co-opted it to make the SEC's and SROs' jobs of regulation and enforcement easier.  A statute for investors has been turned into a statute for the comfort of regulators.  If the desire for improved enforcement capabilities have merit, the SEC should find that authority in a provision other than Section 11A or request authority from Congress rather than use a statute with a different purpose to find a power that does not exist there.

Fort these reasons, *Amicus* asks the Court to grant Plaintiffs' motion for a preliminary injunction and deny Defendants' motion to dismiss.

4884-9701-2186.2

August 22, 2024

Respectfully submitted,

**GRAY REED**

By: *Chris Davis*
Chris Davis
Texas Bar No. 24050483
Angela L. Brown
Texas Bar No. 24034533
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Tel:     (469) 320-6125
         (469) 320-6225
Email:  cdavis@grayreed.com
        abrown@grayreed.com

Attorneys for *Amicus Curiae*
Andrew N. Vollmer of the Mercatus Center
at George Mason University

4884-9701-2186.2

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2024, I electronically filed the above Unopposed Motion for Leave to File *Amicus* Brief together with the proposed brief by using the District Court's PACER system. I further certify that service will be accomplished by the PACER system.

Dated: August 22, 2024                            */s/ Chris Davis*
                                               Chris Davis

4884-9701-2186.2