No. 6:24-cv-00197

# In the United States District Court for the Western District of Texas

———————————

DAVIDSON, Et Al.,
*Plaintiffs*,

v.

GENSLER, Et Al.,
*Defendants*

———————————

**BRIEF OF ADVANCING AMERICAN FREEDOM, INC.; AFA ACTION; AMAC ACTION; AMERICAN ASSOCIATION OF SENIOR CITIZENS; AMERICAN CONSTITUTIONAL RIGHTS UNION; AMERICAN ENCORE; AMERICAN FAMILY ASSOCIATION; AMERICAN VALUES; AMERICANS FOR LIMITED GOVERNMENT; SHAWNNA BOLICK, ARIZONA STATE SENATOR, DISTRICT 2; CAPABILITY CONSULTING; CENTER FOR INDEPENDENT THOUGHT; CENTER FOR POLITICAL RENEWAL; CENTER FOR URBAN RENEWAL AND EDUCATION (CURE); EAGLE FORUM; JOANN FLEMING, EXECUTIVE DIRECTOR, GRASSROOTS AMERICA - WE THE PEOPLE PAC; FRONTLINE POLICY COUNCIL; REPRESENTATIVE STEVEN E. GALLOWAY, DISTRICT 24, MONTANA HOUSE OF REPRESENTATIVES; CHARLIE GEROW; ALLEN J. HEBERT, CHAIRMAN, AMERICAN-CHINESE FELLOWSHIP OF HOUSTON; INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN ENDORSERS; JCCWATCH.ORG; JOB CREATORS NETWORK FOUNDATION LEGAL ACTION FUND; JOB CREATORS NETWORK; TIM JONES, FMR. SPEAKER, MISSOURI HOUSE; CHAIRMAN, MISSOURI CENTER-RIGHT COALITION; MEN AND WOMEN FOR A REPRESENTATIVE DEMOCRACY IN AMERICA, INC.; NATIONAL RELIGIOUS BROADCASTERS; NEW JERSEY FAMILY FOUNDATION; NEW JERSEY FAMILY POLICY CENTER; NORTH CAROLINA INSTITUTE FOR CONSTITUTIONAL LAW; ORTHODOX JEWISH CHAMBER OF COMMERCE; RIO GRANDE FOUNDATION; PAMELA S. ROBERTS, IMMEDIATE PAST PRESIDENT- KENTUCKY FEDERATION OF REPUBLICAN WOMEN; SETTING THINGS RIGHT; 60 PLUS ASSOCIATION; STAND FOR GEORGIA VALUES ACTION; STRATEGIC COALITIONS & INITIATIVES, LLC; STUDENTS FOR LIFE OF AMERICA; TEA PARTY EXPRESS; TEA PARTY PATRIOTS ACTION; THE JUSTICE FOUNDATION; TRADITION, FAMILY, PROPERTY, INC.; J. MICHAEL WALLER; WOMEN FOR DEMOCRACY IN AMERICA, INC.; WISCONSIN FAMILY ACTION, INC.; YANKEE INSTITUTE; YOUNG AMERICA'S FOUNDATION; YOUNG CONSERVATIVES OF TEXAS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS**

———————————

J. MARC WHEAT
  *Counsel of Record*
(VA State Bar No. 39602)
Timothy Harper (Admitted in DC)
(DC State Bar No. 90019755)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amicus Curiae*

August 22, 2024

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF INTEREST OF AMICI ...........................................................1

INTRODUCTION ................................................................................................3

ARGUMENT .......................................................................................................5

    I.    The SEC's Implementation of the CAT Violates the
        Constitution's Separation of Powers Structure ....................................5

        A.    The CAT's Funding Mechanism Usurps Congress's
                Constitutionally Delegated Authority to Appropriate
                Funds .......................................................................................5

        B.    The SEC's creation of the CAT implicates and violates
                the major questions doctrine .....................................................9

    II.    CAT's Disclosure Requirements Constitute Unreasonable
        Mass Seizures that Allow Unrestricted, Suspicionless
        Searches Violative of the Fourth Amendment ...................................13

        A.    CAT Disclosure Requirements Violate Investors'
                Privacy Expectations ................................................................14

        B.    Records the CAT Compels Disclosure of are Fourth-
                Amendment-Protected .............................................................16

        C.    The CAT Seizures and Searches Do Not Fall Under
                the Third-Party Principle ..........................................................17

        D.    The CAT Seizures and Searches Do Not Meet
                Administrative Search Exception Requirements ......................21

    III.    The CAT is not a Necessary and Proper Exercise of
         Congress's Commerce Clause Authority ...........................................22

    IV.    The Collection of Data Invites Hacking and Abuse as
         Demonstrated Over and Over Again by Both Private
         and Government Information Databases ............................................26

CONCLUSION ..................................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*California v. Hodari D.,*
  499 U.S. 621 (1991)................................................................. 15, 16

*Carpenter v. United States,*
  585 U.S. 296 (2018)................................................................. *passim*

*City of Los Angeles, Calif. v. Patel,*
  576 U.S. 409 (2015).......................................................................21

*Gonzales v. Oregon,*
  546 U.S. 243 (2006).....................................................................9, 11

*Gonzales v. Raich,*
  545 U.S. 1 (2005).............................................................................23

*Gundy v. United States,*
  588 U.S. 128 (2019).......................................................................7, 8

*Katz v. United States,*
  389 U.S. 347 (1967)................................................................. 14, 17

*King v. Burwell,*
  576 U.S. 473 (2015).....................................................................9, 11

*Kyllo v. United States,*
  533 U.S. 27 (2001)..........................................................................14

*Marbury v. Madison,*
  5 US (2 Cranch) 137 (1803) .............................................................3

*McCulloch v. Maryland,*
  17 U.S. 316 (1819)................................................................. 6, 23, 24

*Nasdaq Stock Mkt. LLC v. SEC,*
  34 F.4th 1105 (D.C. Cir. 2022) .........................................................12

*New York v. Burger,*
  482 U.S. 691 (1987).......................................................................22

*NFIB v. OSHA,*
  595 U.S. 109 (2022)............................................................................9, 11

*Olmstead v. United States,*
  277 U.S. 438 (1928)..............................................................................19

*Smith v. Maryland,*
  442 U.S. 735 (1979)..............................................................................17

*United States v. Comstock,*
  560 U.S. 126 (2010)..............................................................................24

*United States v. Jones,*
  565 U.S. 400 (2012)..............................................................................14

*United States v. Knotts,*
  460 U.S. 276 (1983)..............................................................................16

*United States v. Lopez,*
  514 U.S. 549 (1995)..............................................................................22

*United States v. Miller,*
  425 U.S. 435 (1976)..............................................................................16

*Util. Air Regul. Grp. v. EPA,*
  573 U.S. 302 (2014)...............................................................9, 11, 12, 13

*West Virginia v. EPA,*
  597 U.S. 697 (2022)........................................................9, 10, 11, 12, 13

**Constitution:**

U.S. Const. amend. IV ................................................................. 13, 14, 16, 25

U.S. Const. art. I, § 1................................................................................9, 25

U.S. Const. art. I, § 7, cl. 1.........................................................................6

U.S. Const. art. I, § 8 cl. 1 .........................................................................6

U.S. Const. art. I, § 8, cl. 3........................................................................22

U.S. Const. art. I, § 8, cl. 18......................................................................23

U.S. Const. art. I, § 9, cl. 7................................................................................6, 25

**Statutes and Regulations:**

15 U.S.C. § 78k-1(a)(3)(B) .............................................................................12

17 C.F.R. § 242.613(c)(2)-(8) .........................................................................15

17 C.F.R. § 242.613(e)(2) .................................................................... *passim*

17 C.F.R. § 242.613(c)(7)(i)-(viii) ............................................................ 16, 18, 20

17 C.F.R. § 242.613(e)(8) ................................................................................20

17 C.F.R. § 242.613(j)(9)................................................................................15

**Other Authorities:**

Brooke Auxier, Lee Rainie, Monica Anderson, Andrew Perrin, Madhu
    Kumar, Erica Turner, *Americans and Privacy: Concerned, Confused and
    Feeling Lack of Control Over their Personal Information*, Pew Research
    Center (November 15, 2019), https://www.pewresearch.org/
    internet/2019/11/15/americans-and-privacy-concerned-confused-and-
    feeling-lack-of-control-over-their-personal-information/ ..................................10

Randy Barnett, *New Evidence of the Original Meaning of the Commerce
    Clause*, 55 Ark. L. Rev. 847 (2003)....................................................................23

Amir Bibawy, *SEC reveals 2016 hack that breached its filing system*,
    Associated Press (Sep. 20, 2017),
    https://apnews.com/article/d81daf569c75472bbcba22d2f5ba0f34......................26

Paul Bischoff, *A recent history of US Government Breaches – can you
    trust them with your data?*, Comparitech (Nov. 28, 2023),
    https://www.comparitech.com/blog/vpn-privacy/us-government-breaches/ .27, 28

Thomas Brewster, *191 Million US Voter Registration Records Leaked
    In Mystery Database*, Forbes (Dec. 28, 2015),
    https://www.forbes.com/sites/thomasbrewster/2015/12/28/us-voter-
    database-leak/ ......................................................................................................28

Brief for Amici Curiae Tom Cotton and 21 members of Congress, American
    Securities Association and Citadel Securities v. United States Securities
    and Exchange Commission (2024).......................................................................11

iv

*CAT NMS Plan Amendment: Funding Model*, U.S. Securities and Exchange Commission (June 20, 2024), https://www.sec.gov/files/34-98290-fact-sheet.pdf.............................................................................................5, 8

*Consolidated Audit Trail, LLC, 2023 Financial and Operating Budget*, Perma.cc (March 28, 2023), https://perma.cc/36W2-CKJ5 ...............................11

David DiMolfetta, *The Pentagon is notifying individuals affected by 2023 email data breach*, Government Executive (Feb. 15, 2024), https://www.govexec.com/technology/2024/02/pentagon-notifying-individuals-affected-2023-email-data-breach/394184/ ......................................27

Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc., 1983).................1

The Federalist No. 10 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .............................................................6

The Federalist, No. 45 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) ...........................................................25

The Federalist, No. 47 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .............................................................7

The Federalist, No. 48 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .............................................................7

The Federalist, No. 84 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) ...........................................................25

Jim Forsyth, *Records of 4.9 mln stolen from car in Texas data breach*, Reuters (Sep. 29, 2011) https://www.reuters.com/article/us-data-breach-texas-idUSTRE78S5JG20110929/ ........................................................................28

Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* (2024)..................................................................................................................3, 7

Jon Haworth and Luke Barr, *AT&T says hacker stole some data from 'nearly all' wireless customers*, ABC News (Jul. 12, 2024), https://abcnews.go.com/US/att-hacker-stole-data-wireless-customers/story?id=111874118..............................................................................28

v

Bill Hutchinson, *Chelsea Manning speaks of solitary confinement during New Year's Day poetry event*, ABC News (Jan. 2, 2024) https://abcnews.go.com/US/chelsea-manning-speaks-solitary-confinement-new-years-day/story?id=106043233 ................................................27

*Identifying Defects in the Constitution,* Documents from the Continental Congress and Constitutional Convention, 1774-1789 (June 20, 2024), https://www.loc.gov/collections/continental-congress-and-constitutional-convention-from-1774-to-1789/articles-and-essays/to-form-a-more-perfect-union/identifying-defects-in-the-constitution/ ..................................... 5-6

Implementation and Cybersecurity Protocols of the Consolidated Audit Trail: Hearing Before the Subcomm. on Cap. Mkts., Sec., & Inv. Of the H. Comm. On Fin. Servs., 115th Cong. 10 (2017) (statement of Lisa Dolly, CEO, Pershing, a bank of New York Mellon company), https://www.govinfo.gov/content/pkg/CHRG-115hhrg31288/pdf/CHRG-115hhrg31288.pdf ............................................................................26

John Kennedy, *SEC's Consolidated Audit Trail is a disaster waiting to happen*, John Kennedy U.S. Senator for Louisiana (Nov. 16, 2023), https://www.kennedy.senate.gov/public/2023/11/sec-s-consolidated-audit-trail-is-a-disaster-waiting-to-happen ...................................................13

Zach Kessel, *SEC Finalizing a 'Big Brother' Database to Track Americans' Stock Trades in Real Time* (July 23, 2024), https://www.nationalreview.com/news/sec-finalizing-a-big-brother-database-to-track-americans-stock-trades-in-real-time/................................14, 27

Katie Kolchin, *Top 10 Takeways from SIFMA's 2024 Capital Markets Fact Book*, SIFMA (August 12, 2024), https://www.sifma.org/resources/news/top-10-takeaways-from-sifmas-2024-capital-markets-fact-book/ ...........................................................................10

Philip B. Kurland & Ralph Lerner, *The Founders' Constitution* (2000) .................7

Mary Kay Mallonee, *Hackers publish contact info of 20,000 FBI employees*, CNN (Feb. 8, 2016) https://edition.cnn.com/2016/02/08/politics/hackers-fbi-employee-info/index.html............................................................................27

Colleen McClain, Michelle Faverio, Monica Anderson, Eugenie Park, *How Americans View Data Privacy*, Pew Research Center (Oct. 18, 2023), https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/ .........................................................................................10

Craig A. Newman, *A Closer Look: SEC's Edgar Hacking Case*, Patterson Belknap Data Security Law Blog (Feb. 12, 2019), https://www.pbwt.com/data-security-law-blog/a-closer-look-secs-edgar-hacking-case ...................................................................................................26

*Oversight of the Status of the Consolidated Audit Trail, Hearing Before the S. Comm. on Banking, Hous., and Urb. Affs.*, 116th Cong. (2019) (Testimony of Shelly Bohlin, COO of FINRA CAT LLC), https://perma.cc/G49S-GR3G ...........................................................................25

Aimee Picchi, *Hackers may have stolen the Social Security numbers of many Americans. Here's what to know.*, CBS News (Aug. 15, 2024) https://www.cbsnews.com/news/social-security-number-leak-npd-breach-what-to-know/..........................................................................................................28

N. Webster, An American Dictionary of the English Language (1828) (reprint 6th ed. 1989)...........................................................................................14

## STATEMENT OF INTEREST OF AMICI

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including the uniquely American idea that all people are created equal and endowed by their Creator with unalienable rights to life, liberty, and the pursuit of happiness.[1] AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes that the governmental structures established by the Constitution are necessary for the preservation of the liberties of the people. When the administrative state usurps the powers of the constitutional branches and the courts fail to intervene, the rights of the people are imperiled. AAF submits this amicus curiae brief on behalf of its 7,967 members living in Texas.

*Amici* AFA Action; AMAC Action; American Association of Senior Citizens; American Constitutional Rights Union; American Encore; American Family Association; American Values; Americans for Limited Government; Shawnna Bolick, Arizona State Senator, District 2; Capability Consulting; Center for

---

[1] No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this amicus brief.

[2] Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983).

1

Independent Thought; Center for Political Renewal; Center for Urban Renewal and Education (CURE); Eagle Forum; JoAnn Fleming, Executive Director, Grassroots America - We the People PAC; Frontline Policy Council; Representative Steven E. Galloway, District 24, Montana House of Representatives; Charlie Gerow; Allen J. Hebert, Chairman, American-Chinese Fellowship of Houston; International Conference of Evangelical Chaplain Endorsers; JCCWatch.org; Job Creators Network Foundation Legal Action Fund; Job Creators Network; Tim Jones, Fmr. Speaker, Missouri House; Chairman, Missouri Center-Right Coalition; Men and Women for a Representative Democracy in America, Inc.; National Religious Broadcasters; New Jersey Family Foundation; New Jersey Family Policy Center; North Carolina Institute for Constitutional Law; Orthodox Jewish Chamber of Commerce; Rio Grande Foundation; Pamela S. Roberts, Immediate Past President-Kentucky Federation of Republican Women; 60 Plus Association; Setting Things Right; Stand for Georgia Values Action; Strategic Coalitions & Initiatives, LLC; Students for Life of America; Tea Party Express; Tea Party Patriots Action; The Justice Foundation; Tradition, Family, Property, Inc.; J. Michael Waller; Women for Democracy in America, Inc.; Wisconsin Family Action, Inc.; Yankee Institute; Young America's Foundation; and Young Conservatives of Texas believe that the constitutional separation of powers is essential to the protection of the rights and liberties of the American people.

**INTRODUCTION**

Federal regulatory agencies are circling this case like jackals, watching to see if this Court will allow them to tear away at powers the Constitution reserves only to Congress, or the People. The Securities and Exchange Commission (SEC) has circumvented congressional authorization and appropriation powers by launching a massive surveillance program against the American people and compelling private entities it regulates to build and pay for it.[3]

This case concerns the SEC's creation of the anodyne-sounding Consolidated Audit Trail (CAT), a data collection and surveillance system which will aggregate, for the perusal of a multitude of federal and quasi-regulatory agents, every securities trade in the United States and match it to personally identifiable information (PII) of those on both sides of the transaction. The inflow of data is so large, that it is believed that the only data-collection program that is larger is one gathering signals intelligence from potential adversaries by the National Security Agency. It is not hard to imagine the myriad dangers CAT poses, not least of which is the potential that it will capture private donor information for donations of securities.

---

[3] Justice Gorsuch points out that regulatory agencies regularly circumvent congressional authority. "[A]gencies can write, change, and change again rules affecting millions of Americans – all without any input from Congress." Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* 77 (2024). As for the constitutionality of such an arrangement see *Marbury v. Madison*, 5 US (2 Cranch) 137, 174, 176 (1803): "All laws which are repugnant to the Constitution are null and void."

It appears that, "through a long train of abuses and usurpations," the SEC has been piecing together this unconstitutional chimera since 2012, hacking off powers from one branch of government and monstrously grafting them on to parts of others, while amputating various parts of the Bill of Rights. The SEC, a regulatory agency in the executive branch, has abrogated the congressional power of the purse by force, funding CAT through entities it regulates that are in no position to protest. In turn, CAT surveilles Americans on a mass scale without benefit of judicial warrant and chills First Amendment freedoms of speech and association. How could this have survived for so long without being exposed to the free air of public accountability? Even if Congress were to attempt to put the CAT onto a congressional life-support system, it would likely fail the necessary and proper exercise of commerce power. It is hard to imagine a less constitutional construct in the entire administrative state. The CAT is responsible for storing incredible amounts of sensitive information about Americans in a database which will become the number one target of malicious state and non-state hackers.

This Court should run through all nine lives of the CAT and terminate this unconstitutional behemoth.

**ARGUMENT**

**I.      The SEC's Implementation of the CAT Violates the Constitution's Separation of Powers Structure.**

When it established the CAT, the SEC, an agent of the executive branch, usurped the legislature's power of the purse. This erosion of the Constitution's separation of powers guarantees which will have vast economic and political consequences, triggering the major questions doctrine. This deviation from the original understanding of the Constitution infringes on guarantees essential to the protection of liberty. Self-regulatory organizations and brokers will be forced to fund the CAT through an Executed Share Model.[4] The CAT operating committee will issue fees and fund the program indefinitely, without any initial authorization or subsequent input from Congress.[5]

> A. The CAT's Funding Mechanism Usurps Congress's Constitutionally Delegated Authority to Appropriate Funds.

The inability of the government to raise sufficient funds from the states during the Revolutionary War convinced the Framers of the need to vest taxing and spending powers in the federal government,[6] despite the Framers' awareness that

---

[4] *CAT NMS Plan Amendment: Funding Model*, U.S. Securities and Exchange Commission, (June 20, 2024, 11:50 AM), https://www.sec.gov/files/34-98290-fact-sheet.pdf.

[5] *Id.*

[6] *Identifying Defects in the Constitution,* Documents from the Continental Congress and Constitutional Convention, 1774-1789 (June 20, 2024, 1:17 PM),

this power could be abused.[7] As Chief Justice John Marshall famously declared, "the power to tax involves the power to destroy." *McCulloch v. Maryland*, 17 U.S. 316, 431 (1819). Hamilton defended these powers, reasoning that a government must have the ability to accomplish the objects committed to its care, and since the federal government is vested with the responsibility for enumerated powers such as national defense, it must have the power to raise revenue to fulfill such functions.

Recognizing both the necessity of these powers and their potential for abuse, the Framers specifically lodged revenue and appropriations powers with Congress, not with the executive branch. The Constitution requires that bills for raising revenue originate in the House of Representatives and pass the Senate. U.S. Const. art. 1, § 7, cl. 1. The Constitution reserves for Congress the power to lay and collect taxes. U.S. Const. art 1, § 8 cl. 1, and approve any money before it can be appropriated from the Treasury. U.S. Const. art. 1, § 9, cl. 7.

---

https://www.loc.gov/collections/continental-congress-and-constitutional-convention-from-1774-to-1789/articles-and-essays/to-form-a-more-perfect-union/identifying-defects-in-the-constitution/.

[7] "The apportionment of taxes on the various descriptions of property is an act which seems to require the most exact impartiality; yet there is, perhaps, no legislative act in which greater opportunity and temptation are given to a predominant party to trample on the rules of justice." The Federalist No. 10, at 45 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

Restricting the power of the purse to the legislative instead of the executive branch provides a check on abuse of that power because the "proposed law must win the approval of two Houses of Congress—elected at different times, by different constituencies, and for different terms in office—and either secure the President's approval or obtain enough support to override his veto." *Gundy v. United States*, 588 U.S. 128, 154 (2019) (Gorsuch, J., dissenting).[8] The constitutional process encourages deliberation and broad consensus before the power is exercised. *Id*. If the executive had unilateral authority to tax, fund, and enact laws, there would not be a sufficient check on an "excess of law making" and the accompanying infringements on liberty. *Id*. (citing the Federalist No. 48, at 309-312 (J. Madison)). As Madison wrote, "[t]here can be no liberty where the legislative and executive powers are united in the same person, or body of magistrates."[9]

---

[8] Oliver Elsworth remarked during the Convention that, historically in other Republics, large states tend to influence the executive more than small states, so giving large amounts of power to an elected executive still risks the interests of the large states dominating over the small states, "Even in the executive, the larger states have had ever great influence." Records of the Federal Convention at 193 (Philip B Kurland & Ralph Lerner, *The Founders' Constitution* (2000)).

[9] The Federalist No. 47, at 251 (James Madison) (paraphrasing from Montesquieu's Spirit of Laws) (George W. Carey and James McClellan, eds., The Liberty Fund 2001). With respect to "excess of lawmaking," see generally, Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* (2024).

The CAT's funding mechanism usurps Congress's constitutionally delegated authority to tax and appropriate funds and erodes the separation of powers. Fees are determined and issued to participants (self-regulatory organizations) and industry members (the brokers of the exchanges) by the CAT operating committee, a group chosen by the participants.[10] The CAT's funding structure allows the executive branch to fund and implement the program indefinitely without an appropriation or law that passes through all the checks, balances, and broad consensus that bicameral legislation entails. Ensuring power does not aggregate in one branch is the essential protection for liberty. "When the separation of powers is at stake, [the Court] does not just throw up [its] hands." *Gundy*, 588 U.S. at 159 (Gorsuch, J., dissenting). The preservation of liberty requires conformance with the Constitution's delegation of the taxing and spending powers, limitations on power the CAT mechanism clearly exceeds. In light of the Supreme Court's decision overturning the Chevron Doctrine in *Loper Bright v. Raimondo*, No. 22-451 (Jul. 30, 2024), the SEC and CAT LLC should not expect deference.

Courts have recognized the unconstitutionality of such funding structures. Less than a month ago, the Fifth Circuit ruled that an analogous Federal

---

[10] *CAT NMS Plan Amendment: Funding Model*, U.S. Securities and Exchange Commission, (June 20, 2024, 11:50 AM), https://www.sec.gov/files/34-98290-fact-sheet.pdf.

Communications Commission (FCC) scheme that "subdelegated the taxing power to a private corporation… [which] in turn, relied on for-profit telecommunications companies to determine how much American citizens would be forced to pay for the "universal service" tax that appears on cell phone bills across the Nation…violates Article I, § 1 of the Constitution." *Consumers' Research v. Federal Communications Commission*, No. 22-60008 at \*2 (5th Cir. July 24, 2024). The CAT's *de facto* tax fails to pass constitutional muster.

    B. The SEC's creation of the CAT implicates and violates the major questions doctrine.

    A core protection of the separation of powers is the major questions doctrine. Under the doctrine, "administrative agencies must be able to point to 'clear congressional authorization' when they claim the power to make decisions of vast 'economic and political significance.'" *West Virginia v. EPA*, 597 U.S. 697, 735 (Gorsuch, J., concurring). The doctrine is triggered when an agency claims to "resolve a matter of great 'political significance' . . . or end an 'earnest and profound debate across the country.'" *Id*. at 743 (quoting *NFIB v. OSHA*, 595 U.S. 109, 117 (2022); *Gonzales v. Oregon*, 546. U.S. 243, 267-68 (2006)). It can also be activated when an agency seeks to "regulate 'a significant portion of the American economy' or 'require billions of dollars in spending by private persons or entities.'" *Id*. at 744 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); *King v. Burwell*, 576 U.S. 473, 517 (2015)).

9

The major questions doctrine applies to the creation and funding of the CAT. The collection and storage of personally identifiable information is a matter of "great political significance." *Id.* at 743. The Federal Reserve reports that 58 percent of American households owned stocks in 2022.[11] A Pew Research poll conducted in 2019 found that 66 percent of American adults believed that the potential risks of government collection of their private data outweighed the benefits, and 64 percent expressed concern about how the government uses the data collected.[12] In 2023, the percentage that expressed such concern increased to 71 percent.[13] Furthermore, Court precedent found that basic constitutional questions on topics such as equality, federalism, and separation of powers were of sufficient importance to trigger the major questions doctrine. *See West Virginia*, 597 U.S. at 742 (Gorsuch, J., concurring). The Fourth Amendment concerns in this case are of no less importance to our Constitution than the aforementioned topics.

---

[11] Katie Kolchin, *Top 10 Takeways from SIFMA's 2024 Capital Markets Fact Book*, SIFMA (August 12, 2024), https://www.sifma.org/resources/news/top-10-takeaways-from-sifmas-2024-capital-markets-fact-book/.

[12] Brooke Auxier, Lee Rainie, Monica Anderson, Andrew Perrin, Madhu Kumar, Erica Turner, *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over their Personal Information*, Pew Research Center (November 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[13] Colleen McClain, Michelle Faverio, Monica Anderson, Eugenie Park, *How Americans View Data Privacy*, Pew Research Center (Oct. 18, 2023), https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/.

Therefore, widespread concern from the public, coupled with concerns of infringement of a Bill of Rights guarantee, make CAT and its data collection a matter of "great political significance." *Id*. at 743 (quoting *NFIB v. OSHA*, 595 U.S. 109, 117 (2022)). CAT took this relevant matter out of the people's hands and "end[ed] an 'earnest and profound debate across the country,'" *Id*. (quoting *Gonzales v. Oregon*, 546 U.S. at 267-68), triggering the major question doctrine.

Beyond its political significance, the CAT also "regulates a significant portion of the American economy" and "requires billions of dollars in spending by private persons or entities." *Id.* at 744 (quoting *Util. Air Regul. Grp.*, 573 U.S. at 324; *King*, 576 U.S. at 517). The development of the CAT cost $1 billion dollars in 2022,[14] and its maintenance is currently estimated to cost over $200 million dollars a year.[15] These costs do not consider the likely billions of dollars in compliance costs nor the change in consumer behavior that will result from the increased costs of engaging in trade and fear of data breaches. The decision to implement the CAT changed the trajectory of billions of private dollars, making it a decision of "vast economic significance." This triggers the major questions doctrine. Therefore, for

---

[14] Brief for Amici Curiae Tom Cotton and 21 members of Congress, American Securities Association and Citadel Securities v. United States Securities and Exchange Commission, (2024) (No.4-968).

[15] *Consolidated Audit Trail, LLC, 2023 Financial and Operating Budget*, Perma.cc (March 28, 2023), https://perma.cc/36W2-CKJ5).

the SEC to implement the CAT, the agency must point to "clear congressional authorization." *West Virginia*, 597 U.S. at 735 (Gorsuch, J., concurring).

The only thing clear about the CAT is that it is not based on "clear congressional authorization." *Id.* When the Court evaluates this standard, it recognizes that "it is unlikely that Congress will make an '[e]xtraordinary gran[t] of regulatory authority' through 'vague language' in 'a long-extant statute.'" *Id.* (quoting *Util. Air Regul. Grp.*, 573 U.S. at 324). The SEC cites a 1988 provision in section 11a of the Securities and Exchange Act to claim that Congress granted the power to create and implement the CAT. *Davidson v. Gensler*, No. 6:24-cv-00197-ADA, SEC Defendants' Motion to Dismiss, at 28-29 (W.D. Tex.) (July 12, 2024). This section gives the SEC the authority to "require self-regulatory organizations to act jointly with respect to matters as to which they share authority under the Exchange Act in planning, developing, operating, or regulating a facility of the National Market System." 15 U.S.C. § 78k-1(a)(3)(B). The SEC admits this language does not give express authorization for the creation of the CAT. *See* Order at 62673. Furthermore, the CAT differs dramatically in its content from prior regulations that rely on section 11a. Historically, the SEC used the statute to require disclosures of market data to other market participants to ensure a fair current market. *See Nasdaq Stock Mkt. LLC v. SEC*, 34 F.4th 1105, 1106 (D.C. Cir. 2022). Such regulations were previously used to require the disclosure of the price,

12

size of last sale, national highest bid, and national lowest offer for each stock on the exchange. The CAT differs in that it focuses on government surveillance and data storage to conduct searches of past market activity at the level of individual trades. The SEC has "never had this level of access to personally identifiable information previously."[16] Put simply, the SEC relies on "vague language" in a 30-year-old "long extant statute" to claim Congress authorized an "extraordinary grant of regulatory authority" which greatly differs from any prior use of regulatory authority asserted by the statute. *West Virginia*, 597 U.S. at 747 (Gorsuch, J., concurring) (quoting *Util. Air Regul. Grp.*, 573 U.S. at 324). Congress did not authorize the creation of the CAT.

The Framers implemented the separation of powers to safeguard liberty and protect inalienable rights, but CAT evades these checks and forces Americans to fund the erosion of their own freedom.

## II.   CAT's Disclosure Requirements Constitute Unreasonable Mass Seizures that Allow Unrestricted, Suspicionless Searches Violative of the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

---

[16] John Kennedy, *SEC's Consolidated Audit Trail is a disaster waiting to happen*, John Kennedy U.S. Senator for Louisiana (Nov. 16, 2023), https://www.kennedy.senate.gov/public/2023/11/sec-s-consolidated-audit-trail-is-a-disaster-waiting-to-happen.

U.S. Const. amend. IV. It further protects "a person [who has] exhibited an actual (subjective) expectation of privacy [if] . . . the expectation [is] one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). While government actors may use traditional surveillance methods like following suspects in public, "[i]t may be that achieving the same result through electronic means, without an accompanying trespass, is an unconstitutional invasion of privacy." *United States v. Jones*, 565 U.S. 400, 412 (2012). As former Attorney General William Barr observed, "If the government can collect this information just in case, that's the big-brother surveillance state."[17]

   A. CAT Disclosure Requirements Violate Investors' Privacy Expectations.

Unreasonable searches or seizures occur when the Government violates a person's reasonable expectation of privacy. The meaning of "search," originally understood as it appears in the Constitution, "was the same as it is today: '[t]o look over or through for the purpose of finding something.'" *Carpenter v. United States*, 585 U.S. 296, 347 (2018) (Thomas, J., dissenting) (citing *Kyllo v. United States*, 533 U.S. 27, 32 n.1 (2001) (quoting N. Webster, An American Dictionary of the English Language 66 (1828) (reprint 6th ed. 1989))). "From the time of the

---

[17] Zach Kessel, *SEC Finalizing a 'Big Brother' Database to Track Americans' Stock Trades in Real Time* (July 23, 2024 1:58 PM) https://www.nationalreview.com/news/sec-finalizing-a-big-brother-database-to-track-americans-stock-trades-in-real-time/.

founding to the present, the word 'seizure' has meant a 'taking possession.'" *California v. Hodari D.*, 499 U.S. 621, 624 (1991). There are two basic guideposts that help determine the expectations of privacy that the Fourth Amendment protects: "First, that the Amendment seeks to secure 'the privacies of life' against 'arbitrary power.' Second, and relatedly, that a central aim of the Framers was 'to place obstacles in the way of a too permeating police surveillance.'" *Carpenter*, 585 U.S. at 305.

The CAT entails initial unreasonable mass seizures that allow the SEC and self-regulatory organizations (SROs) to perform suspicionless searches of people's personal information included in their securities records, without any judicial or legislative authorization. 17 C.F.R. § 242.613 (c)(2)-(8), (e)(2). It would be a dubious proposition to claim that people buying stocks expect their names, addresses, and comprehensive transaction details including "the original receipt, or origination, modification, cancellation, routing, and execution" of their orders on any U.S. exchange to be automatically subject to unsupervised snooping. *Id.*; 17 C.F.R. § 242.613(j)(9). This would subject people's private investments to arbitrary, intrusive, and permeating surveillance.

Regardless of whether the securities records CAT compiles are considered the modern-day equivalents of customers' papers or effects or the business records of U.S. exchanges, the CAT reporting requirements constitute a "taking" of these

15

records into CAT LLC's "possession," and thus qualify as seizures under the Fourth Amendment. *Hodari D.*, 499 U.S. at 624. The compilation of these records into the CAT database allows customers' securities records to be searched, as the SEC and various SROs can paw through these records for the alleged purpose of finding regulatory violations. 17 C.F.R. § 242.613 (e)(2)

        B.  Records the CAT Compels Disclosure of are Fourth-Amendment-Protected.

While the Court held in *United States v. Knotts*, 460 U.S. 276, 281 (1983), that "[a] person travelling . . . on public thoroughfares has no reasonable expectation of privacy in his movements," the Court in *Carpenter*, held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." 585 U.S. at 310. While securities transactions may be akin to "original checks and deposit slips," which *United States v. Miller*, 425 U.S. 435, 442 (1976), held carried "no legitimate 'expectation of privacy,'"[18] the cumulative securities records compiled by the CAT warrants legitimate expectations of privacy because of the sweeping and comprehensive nature of the information collected. *See* 17 C.F.R. § 242.613(c)(7)(i)-(viii). This interpretation allows precedent to remain faithful to *Carpenter*, where the Court held that government access to such comprehensive information over extended

---

[18] Yet, *Miller* suggested that government acquisition of bank records required adherence to the legal process, and some judicial scrutiny. 425 U.S. at 446.

16

periods violated legitimate privacy expectations. 585 U.S. at 320. Thus, the

people's cumulative securities records compiled in the CAT should be considered

the "modern-day equivalents" of papers or effects, or at the very least, garner

expectations of privacy that require judicial authorization to access. *See Carpenter*,

585 U.S. at 319.

When the Government performs "searches conducted outside the judicial

process, without prior approval by judge or magistrate, [the searches] are per se

unreasonable under the Fourth Amendment—subject only to a few specifically

established and well-delineated exceptions." *Katz*, 389 U.S. at 357. The SEC

grasps at two exceptions to justify its unrestricted searches under the CAT: the

consent exception through the third-party doctrine, and the administrative search

exception. The CAT fails to meet constitutional muster under both.

    C.  The CAT Seizures and Searches Do Not Fall Under the Third-Party
        Principle.

The third-party doctrine holds that there is "no legitimate expectation of privacy

in information [] *voluntarily* turn[ed] over to third parties." *Smith v. Maryland*, 442

U.S. 735, 743-44 (1979) (emphasis added). When customers make stock

transactions on U.S. exchanges, they are not expressly handing over the details of

those transactions to their exchange. Rather, those details are recorded, regardless

of that customer's wishes. "Just because you *have* to entrust a third party with your

17

data doesn't necessarily mean you should lose all Fourth Amendment protections."

*Carpenter*, 585 U.S. at 401 (Gorsuch, J., dissenting) (emphasis in original). Thus, simply making transactions on a U.S. exchange does not imply a customer's consent to the accompanying records being compiled into a database which is accessible to regulators. This renders the information conveyed involuntary and an invalid application of the third-party principle.

Even if customers' stock transactions on U.S. exchanges are viewed as a voluntary conveyance of the accompanying details, the CAT is still not a proper application of the third-party principle. This is because the exchanges are the records' owners, and CAT rules force U.S. exchanges to transmit their records to CAT LLC, rendering the disclosure an involuntary seizure. 17 C.F.R. § 242.613(c)(7)(i)-(viii).

Nevertheless, even if the CAT is held as a facially proper imposition of the third-party principle, it is still unconstitutional under the Fourth Amendment, just as government acquisition of cell-site location information (CSLI) was in *Carpenter*, 585 U.S. at 320. In *Carpenter*, prosecutors applied for a court order requesting the CSLI of robbery suspects. *Id*. at 301-02. Prosecutors requested these records under the Stored Communications Act, which allowed compelled disclosure of telecommunications records through judicial subpoena under a reasonable suspicion standard. *Id*. Federal magistrate judges approved, ordering

18

two cellphone companies to produce the CSLI records. *Id*. at 302. The Court noted, "personal location information maintained by a third party—d[id] not fit neatly under existing precedents." *Id*. at 306. The Court reasoned that, "[a]lthough such records are generated for commercial purposes, that distinction does not negate [the suspect's] anticipation of privacy." *Id*. at 311. The Court also expressed concerns about the retrospective nature of the information CSLI provided, noting that "police need not even know in advance whether they want to follow a particular individual, or when." *Id*. at 312. The Court asserted that it "is obligated—as '[s]ubtler and more far-reaching means of invading privacy have become available to the Government'—to ensure that the 'progress of science' does not erode Fourth Amendment protections." *Id*. at 320 (quoting *Olmstead v. United States*, 277 U.S. 438, 474 (1928) (Brandeis, J., dissenting). The Court thus held that the Government's "unrestricted access" to CSLI violated the Fourth Amendment, due to CSLI's "deeply revealing nature, . . . depth, breadth, [] comprehensive reach, and the inescapable and automatic nature of its collection." *Id*.

The CAT goes an unconstitutional leap further than did the government's acquisition of CSLI, because the SEC's access to customers' personal data in the CAT is even less restricted than was the government's to the suspects' CSLI in *Carpenter*. In *Carpenter*, prosecutors had to request data from cell phone

19

companies under the Stored Communications Act through judicial subpoena, while the CAT allows SEC to paw through to these records without legislative authorization or judicial oversight. *Id*. at 301-02; 17 C.F.R. § 242.613(e)(2). Additionally, the CAT requires customer information disclosures of similarly impermissible "depth, breadth, and comprehensive reach" as the CSLI disclosures in *Carpenter*. 585 U.S. at 320. The CAT "require[s] each national securities exchange [and] national securities association . . . to record and [] report . . . details for each order and each reportable event, including, but not limited to, the following information:" customer identification numbers, account information, order identification numbers, and the date, time, and material terms for every order, purchase, sale, modification, or cancelled trade of securities. 17 C.F.R. § 242.613(c)(7)(i)-(viii). Like in *Carpenter*, the SEC will have nearly unfettered retroactive access to the people's securities records, allowing government actors to peer years into the past to investigate potential securities violations against any stock-trading individual that may provoke the curiosity of any bureaucrat. *Carpenter*, 585 U.S. at 312; *see* 17 C.F.R. § 242.613(e)(8). These compelled disclosures and their compilation in the CAT would also extinguish any chance customers have to assert their Fourth Amendment rights to their records through a claim of bailment—considered to be the proper remedy for people to protect their privacy expectations against governmental access when their records are held by a

20

third party. *Id*. at 399 (Gorsuch, J., dissenting). The CAT thus fails Fourth

Amendment muster under both the third-party principle and the *Carpenter*

exception to it.

> D. The CAT Seizures and Searches Do Not Meet Administrative Search
>    Exception Requirements.

The CAT is not a proper application of the administrative search exception, as it

does not provide any opportunity for pre-compliance review. In *City of Los*

*Angeles, Calif. v. Patel*, 576 U.S. 409, 412 (2015), hotel operators challenged a Los

Angeles municipal provision that required hotels to keep specified information

records of their guests and turn them over to police on demand; the Court held that

this law facially violated the Fourth Amendment. "For an administrative search to

be constitutional, the subject of the search must be afforded an opportunity to

obtain pre-compliance review before a neutral decisionmaker." *Id*. at 420.

Additionally, the Court held that the hotel industry could not properly fall in the

narrow category of those industries so "closely regulated" as to extinguish

reasonable expectations of privacy in their records. *Id*. at 424. The Court noted

only four industries in this category: liquor sales, firearm dealing, mining, and

automobile junkyards. *Id*. at 421. These industries fall under the rare exception due

to the "clear and significant risk to [] public welfare" they pose. *Id*.

However, for a regulatory scheme to constitutionally subject even a closely regulated industry to warrantless search, it must satisfy the Fourth Amendment's reasonableness test. This test's third prong requires that "the statute's inspection program, in terms of the certainty and regularity of its application, provid[e] a constitutionally adequate substitute for a warrant." *New York v. Burger*, 482 U.S. 691, 702-03 (1987).

The CAT regulations do not have an adequate warrant substitute. The only requirement coming close to a limitation on the SEC's or an SRO's access to the CAT is that it be for the purpose of "performing [] regulatory and oversight responsibilities." Because the SEC's access to the CAT for regulatory purposes would "not be limited," and there is no requirement for government actors to have any particularized suspicion or judicial authorization, the CAT's compelled disclosures and search accessibility do not comport with the administrative search exception. *Id.*; 17 C.F.R. § 242.613(e)(2).

### III.    The CAT is not a Necessary and Proper Exercise of Congress's Commerce Clause Authority.

Even if congressionally authorized, the CAT would be unconstitutional because it is not a necessary and proper exercise of Congress's commerce power. The Constitution grants Congress the power "[t]o regulate Commerce . . . among the several States." U.S. Const. art. 1, § 8, cl. 3. In other words, it grants Congress

22

the power "to regulate the buying and selling of goods and services trafficked across state lines." *Gonzales v. Raich*, 545 U.S. 1, 57 (2005) (Thomas, J., dissenting) (citing *United States v. Lopez*, 514 U.S. 549, 586-89 (1995) (Thomas, J., concurring)). This understanding of "commerce" as trade was common not only to the drafters of the Constitution but to the general public, including those who ratified it. *Id*. (citing Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L.Rev. 847, 857-862 (2003)).

Implementation of the CAT is neither a necessary nor proper means of exercising Congress's power to regulate interstate trade. The Necessary and Proper clause gives Congress the authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." U.S. Const. art. 1, § 8, cl. 18. In his *McCulloch* opinion, Chief Justice Marshall explained his understanding of this clause: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the [C]onstitution, are constitutional." *McCulloch*, 17 U.S. at 421. As Justice Thomas has explained, *McCulloch* created a two-part test for compliance with the Necessary and Proper Clause:

First, the law must be directed toward a "legitimate" end, which *McCulloch* defines as one "within the scope of the [C]onstitution"— that is, the powers expressly delegated to the Federal Government by some provision in the Constitution . . . Second, there must be a necessary and proper fit between the "means" (the federal law) and the "end" (the enumerated power or powers) it is designed to serve . . . The means Congress selects will be deemed "necessary" if they are "appropriate" and "plainly adapted" to the exercise of an enumerated power, and "proper" if they are not otherwise "prohibited" by the Constitution and not "[in]consistent" with its "letter and spirit."

*United States v. Comstock*, 560 U.S. 126, 160-61 (2010) (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch*, 17 U.S. at 421).

Most importantly here, the fit between the means (the CAT) and the end (regulating interstate commerce) is neither necessary nor proper. The CAT is not necessary because it is not an appropriate or plainly adapted method of regulating interstate commerce. While the SEC may find it more convenient to regulate the interstate market for securities by compiling this information into the CAT, access to the CAT is not restricted to the SEC, but will be accessible by "each national securities exchange, [and] national security association." 17 C.F.R. § 242.613(e)(2). "Such access to and use of such data by each [exchange or association] . . . for the purpose of performing its regulatory and oversight responsibilities pursuant to the federal securities laws, rules, and regulations shall not be limited." *Id*. It is clearly inappropriate for thousands of regulators (many of whom are corporate agents) and successful hackers to have unfettered access to the

24

comprehensive records of every U.S. stock exchange's individual customers' security transactions.[19]

The CAT is not proper because it is inconsistent with the letter and spirit of the Constitution. Its authority rests on constitutionally prohibited extra-legislative rulemaking in violation of the Vesting Clause and Separation of Powers (Section I), its funding mechanism usurps Congress's authority to appropriate funds in violation of the Appropriations Clause (Section I–A), and its required disclosures constitute mass seizures violative of the Fourth Amendment (Section II). Congress, therefore, could not delegate this power to the SEC, *nemo dat quod non habet*. U.S. Const. art. I, § 1; U.S. Const. art. I, § 9, cl. 7; U.S. Const. amend. IV.

One would be hard pressed to postulate that the Framers, Ratifiers, or the founding-era public would have understood the Constitution to allow for a centralized database like the CAT[20] that allows not only government regulators, but, as will be discussed below, private actors such significant access to the financial records of the people. Thus, the CAT is inconsistent

---

[19] *Oversight of the Status of the Consolidated Audit Trail, Hearing Before the S. Comm. on Banking, Hous., and Urb. Affs*., 116th Cong. (2019) (Testimony of Shelly Bohlin, COO of FINRA CAT LLC), available at https://perma.cc/G49S-GR3G.

[20] *See* The Federalist, No. 45 at 241 (James Madison), No. 84 at 445-46 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

with the spirit of the Constitution and ought to be found repugnant to it and the "Blessings of Liberty" the Founders sought to secure. U.S. Const. pmbl.

### IV. The Collection of Data Invites Hacking and Abuse as Demonstrated Over and Over Again by Both Private and Government Information Databases.

Large, centralized government databases are catnip to hackers seeking troves of Americans' personal information. The SEC's very own Electronic Data Gathering, Analysis, and Retrieval system (EDGAR),[21] which processes over 1.7 million electronic filings annually, was not immune to this threat. In 2016, hackers traded on at least nonpublic 157 earnings releases and earned over $4 million.[22] A commission that cannot protect a filing system that processes 1.7 million filings every year cannot be trusted to maintain the security of what will likely become a 100 million-data point database.[23]

---

[21] Amir Bibawy, *SEC reveals 2016 hack that breached its filing system*, Associated Press (Sep. 20, 2017 11:37 PM) https://apnews.com/article/d81daf569c75472bbcba22d2f5ba0f34.

[22] Craig A. Newman, *A Closer Look: SEC's Edgar Hacking Case*, Patterson Belknap Data Security Law Blog (Feb. 12, 2019) https://www.pbwt.com/data-security-law-blog/a-closer-look-secs-edgar-hacking-case.

[23] Implementation and Cybersecurity Protocols of the Consolidated Audit Trail: Hearing Before the Subcomm. on Cap. Mkts., Sec., & Inv. Of the H. Comm. On Fin. Servs., 115th Cong. 10 (2017) (statement of Lisa Dolly, CEO, Pershing, a bank of New York Mellon company) https://www.govinfo.gov/content/pkg/CHRG-115hhrg31288/pdf/CHRG-115hhrg31288.pdf.

As former Attorney General William Barr noted, "It's guaranteed that all this data will end up with our adversaries, likely with the Chinese. Far more secure agencies have been successfully hacked."[24] In 2018, a hacker breached 60 million records of US Postal Service user account details even after being warned a year prior.[25] Hackers stole the personal information of 21.5 million current and former federal government employees from Office of Personnel Management files in 2015.[26] 26,000 current and former Defense Intelligence Agency employees experienced a breach of personally identifiable information (PII) in 2023.[27] A British teenager published the contact information of 20,000 FBI agents in 2016.[28] United States Army soldier Chelsea Manning infamously handed over 750,000 classified documents to WikiLeaks.[29] The healthcare information of 4.6 million

---

[24] Kessel, *supra* note 16.

[25] Paul Bischoff, *A recent history of US Government Breaches – can you trust them with your data?*, Comparitech (Nov. 28, 2023) https://www.comparitech.com/blog/vpn-privacy/us-government-breaches/.

[26] *Ibid.*

[27] David DiMolfetta, *The Pentagon is notifying individuals affected by 2023 email data breach*, Government Executive (Feb. 15, 2024) https://www.govexec.com/technology/2024/02/pentagon-notifying-individuals-affected-2023-email-data-breach/394184/.

[28] Mary Kay Mallonee, *Hackers publish contact info of 20,000 FBI employees*, CNN (Feb. 8, 2016 8:34 PM) https://edition.cnn.com/2016/02/08/politics/hackers-fbi-employee-info/index.html.

[29] Bill Hutchinson, *Chelsea Manning speaks of solitary confinement during New Year's Day poetry event*, ABC News (Jan. 2, 2024 4:29 PM) https://abcnews.go.com/US/chelsea-manning-speaks-solitary-confinement-new-years-day/story?id=106043233.

active duty servicemembers, veterans, and their family members was compromised in a 2011 Tricare breach.[30] GovPayNow.com, which is used by thousands of state and local governments, leaked 14 million records in 2018, including addresses, phone numbers and partial credit card numbers.[31] Additionally, a hacker exposed 191 million records from a database of American voters in 2015.[32] The private sector has experienced massive breaches as well. On July 12, 2024, AT&T announced that someone illegally obtained records of phone calls and text messages from almost all its wireless customers, [33] and an April 2024 nationalpublicdata.com breach exposed 2.7 billion records, including names, addresses, dates of birth, phone numbers, and even Social Security numbers.[34] Creating a centralized hub would generate an appetizing target for hackers and

---

[30] Jim Forsyth, *Records of 4.9 mln stolen from car in Texas data breach*, Reuters (Sep. 29, 2011 6:00 PM) https://www.reuters.com/article/us-data-breach-texas-idUSTRE78S5JG20110929/.

[31] Bischoff, *supra* note 21.

[32] Thomas Brewster, *191 Million US Voter Registration Records Leaked In Mystery Database*, Forbes (Dec. 28, 2015 8:50 AM) https://www.forbes.com/sites/thomasbrewster/2015/12/28/us-voter-database-leak/.

[33] Jon Haworth and Luke Barr, *AT&T says hacker stole some data from 'nearly all' wireless customers*, ABC News (Jul. 12, 2024 12:24 PM) https://abcnews.go.com/US/att-hacker-stole-data-wireless-customers/story?id=111874118.

[34] Aimee Picchi, *Hackers may have stolen the Social Security numbers of many Americans. Here's what to know.*, CBS News (Aug. 15, 2024 6:15 PM) https://www.cbsnews.com/news/social-security-number-leak-npd-breach-what-to-know/.

enemies of the United States to find everything they want to know about

Americans the 58% of American households who own stock.

## CONCLUSION

For the forgoing reasons, this Court should rule for Plaintiffs.


Respectfully submitted,

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
(VA State Bar No. 39602)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*