UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
TEXAS WACO DIVISION

| | |
|---|---|
| ERIK DAVIDSON, *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>GARY GENSLER, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, *et al.*,<br><br>               Defendants. | 6:24-cv-00197-ADA |

**ORDER DENYING PRELIMINARY INJUNCTION**

## I.  SUMMARY

Plaintiffs' motion for a preliminary injunction and a stay must be DENIED. Ruling in the alternative would overwhelmingly harm the actors regulated by the Consolidated Audit Trail, the public, and the legal system. While there are elements that support granting a preliminary injunction, the totality of the factors involved in this case necessitates a denial of the requested "extraordinary remedy." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008). **THEREFORE**, **IT IS ORDERED** that Plaintiffs' Motion to Stay SEC Rule and Orders and Motion for Preliminary Injunction, be **DENIED.**

## II.  BACKGROUND

### 1.  PROCEDURAL HISTORY

Plaintiffs filed the complaint for this lawsuit on April 16, 2024 (ECF No.1). Regarding the cause at issue, Plaintiffs filed the "MOTION to Stay *SEC Rule and Orders*, MOTION for Preliminary Injunction" on May 24, 2024 (ECF No. 25). Defendant Consolidated Audit Trail, LLC

1

filed their "MOTION to Dismiss *and Opposition to Plaintiffs' Motion for Preliminary Injunction and Stay*" on July 12, 2024 (ECF No. 38).[1] Defendant Gary Gensler, of the U.S. Securities and Exchange Commission, filed their "MOTION to Dismiss *and Opposition to Plaintiffs' Motion for Preliminary Injunction Motion*" on July 12, 2024 (ECF No. 39). Plaintiffs filed a Memorandum in Opposition to Motion on August 15, 2024 (ECF No. 42). Defendants filed replies on September 18, 2024 (ECF Nos. 83, 84). Several amici briefs were submitted, including from Competitive Enterprise Institute (ECF No. 72), the Cato Institute and Investor Choice Advocates Network (ECF No. 74), the Blockchain Association and Defi Education Fund (ECF No. 75), and the American Securities Association (ECF No. 76). There was a hearing held on October 15, 2024, regarding this issue and the preliminary injunction was **DENIED** at the conclusion of that hearing.

## 2. THE CONSOLIDATED AUDIT TRAIL (CAT)

At the center of this dispute is the Consolidated Audit Trail (the "CAT"). The SEC implemented the CAT to create a comprehensive trail for all orders and trades in U.S. equity and options markets. The stated goal was to improve the ability to monitor market activity and identify potential market abuse.

The CAT allows for the collection of information on orders, executions, and cancellations for securities traded in U.S. equity and options markets. That information includes details such as the time of order entry, order type, and price. Broker-dealers, exchanges, alternative trading systems (ATSs), and clearing firms, are all required to report this data in real-time to the CAT. A broker-dealer is a registered financial intermediary that buys and sells securities on behalf of clients

---

[1] Note, this order does not address the Motions to Dismiss filed by Defendants (ECF Nos. 38, 39). The Motions to Dismiss will be addressed in a subsequent order.

(broker) or for its own account (dealer). Broker-dealers register with the SEC and become members of a national securities exchange or a registered national "securities association."

The focus of the CAT is tracking the orders and trades themselves to ensure market integrity and regulatory oversight. Individual investors who purchase stocks do not need to register their information under the CAT. Additionally, individual investors' privacy is in some ways maintained as their identities are not directly linked to the transaction data in the CAT system. The reporting requirements fall on broker-dealers, exchanges, and other trading venues. The costs for CAT also fall on the broker-dealers and the exchanges—it is not a direct charge on individual investors. After collecting the information described above, it is stored on a centralized database that aggregates data and tags with metadata to improve accessibility and ease of retrieval.

### 3. REQUESTED RELIEF

Plaintiffs argue that the SEC's creation of the CAT violates citizens' constitutional rights and the Administrative Procedure Act (APA). Thus, Plaintiffs sought a preliminary injunction and a stay that, at a high level, would: (i) stay the SEC's initial order that required creation of the CAT; (ii) stay the related SEC order that authorized the Financial Industry Regulatory Authority (FINRA) to require broker-dealers to submit information to the CAT database; (iii) enjoin the SEC, CAT LLC, and FINRA from facilitating the production of any information to the CAT database; and (iv) enjoin the SEC from accessing any information in the CAT database.

### III. THE LAW

In deciding a motion for a preliminary injunction, a court must consider four factors: (1) a substantial threat of irreparable harm to the movant absent the injunction, (2) the likelihood of the movant's ultimate success on the merits, (3) the balance of harms to the parties, and (4) the public interest. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023). Other cases have

noted that the "first two factors of the traditional standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). However, all of the factors must be considered while evaluating if a preliminary injunction is appropriate in any given case. *Space Expl. Technologies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *2 (W.D. Tex. July 23, 2024) ("These elements are not examined in isolation but balanced in consideration of each other." (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). Several courts in Texas have used an elevated standard regarding the balance of these factors, even stating that a preliminary injunction should not be granted "unless the party seeking it has clearly carried the burden of persuasion on all four requirements[.]" *Fagin v. Hughs*, 473 F. Supp. 3d 711, 716 (W.D. Tex. 2020) (citing *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). Regardless of which standard is used concerning the factors, precedent is clear that preliminary injunctions are an extreme remedy that should be reserved for situations befitting the necessity to issue one.

## IV. ANALYSIS

### 1. IRREPERABLE HARM

Plaintiffs argue that irreparable harm is suffered when an agency such as the SEC issues a rule without authority or issues a rule that violates constitutional rights. Plaintiffs further argue that the effect on open market discourse and implementing compliant procedures would fundamentally undermine and permanently alter the integrity of U.S. financial markets. Defendants counter that self-regulatory organizations (SROs) and broker-dealers have been collecting the information that will be accumulated by the CAT under prior recordkeeping schemes for years. Essentially, Defendants argue that the alleged harm would be suffered regardless of if a preliminary injunction was granted. However, this does not account for the harm felt due to the discrepancies between the

prior methods of data collection and the CAT. Compliance with the CAT, as opposed to prior schemes, can still present irreparable harm due to the changes in the recordkeeping scheme.

This Court is persuaded that the CAT's enhanced recordkeeping will inflict the kind of irreparable harm that may warrant the issuance of a preliminary injunction.[2] This aligns with other courts' decisions when facing enhanced recordkeeping requirements. *See Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 235 (5th Cir. 2024) (citing *Rest. L. Ctr.*, 66 F.4th at 598–599 (5th Cir. 2023). Additionally, these regulatory compliance costs are the type that "*almost always* produces the irreparable harm of nonrecoverable compliance costs."[3] *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016).

Following Fifth Circuit precedent, the Plaintiffs have presented evidence of irreparable harm via increased compliance costs and necessary alterations to operating procedures. Those harms will be suffered if the requested preliminary injunction and stay is not granted. Therefore, the Plaintiffs have met their burden of showing irreparable harm.

## 2.  LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs raise a number of concerns regarding the constitutionality of the CAT system. The Court agrees that the Plaintiffs provides several justified arguments that possess a "substantial likelihood of success on the merits." They include alleged constitutional violations, as well as whether Congress intended to grant the SEC the power to implement the CAT system in this manner. However, the purpose of a preliminary injunction and analysis under this factor is not to "render a meaningful decision on the merits" but rather to preserve the court's ability to later do

---

[2] This Court does not believe that the threat of future cyber-incidents indicates a type of irreparable harm due to the speculative nature. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).
[3] Emphasis found in quotes are all from source unless noted otherwise.

so. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985). This Court will therefore not provide an analysis for each argument raised in briefing or heard during oral argument. Ultimately, as discussed in detail below, the balance of harm and the public interest overwhelm other factors such as this here, where there may exist genuine and meritorious arguments presented by the Plaintiffs. *See Fagin*, 473 F. Supp. 3d at 719 ("[T]he party seeking **preliminary injunction** must clearly carry the burden of persuasion on all four requirements." (citing *Voting for Am.*, 732 F.3d at 386)); *see also Benisek v. Lamone,* 585 U.S. 155, 158, 138 S. Ct. 1942, 1943–44, 201 L. Ed. 2d 398 (2018) ("[A] preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits.")

### 3. BALANCE OF HARMS

Throughout briefing and oral argument, Defendants made abundantly clear that the harm that would be observed from granting this preliminary injunction would be substantial. No backup programs are in place to replace the CAT. Therefore, the CAT is critically important to the government and the securities industry as it enables cross-market securities monitoring to detect wrongdoing and protect investors. To grant a preliminary injunction is to remove any trace of an unfathomable number of transactions that would occur during the time period for which a new system has to be both developed and implemented. This sits squarely against the express purpose of preliminary injunctions as described by the Fifth Circuit. *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *see also Starbucks Corp. v. McKinney,* 144 S. Ct. 1570, 1576, 219 L. Ed. 2d 99 (2024) ("[A preliminary injunction's] purpose is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

The CAT has been out of the bag for years. Defendants' briefing gives an outline of the years it took the CAT to be designed and implemented, as well as the notice provided to those in the industry regarding that implementation. Preserving the status quo and maintaining the integrity of some form of a tracking system necessitate denial of this preliminary injunction until proper relief may be fashioned through a final ruling on the merits.

4. **PUBLIC INTEREST**

There are conflicting public interests involved. Preventing the collection of the public's private information through allegedly unconstitutional means weighs in favor of granting a preliminary injunction. However, the lack of a replacement system for CAT and the public's dependency on a program where compliance information was publicly publicized years ago, weigh against granting the preliminary injunction. In resolving the discrepancy, this Court believes that the public interest factor supports a denial of the preliminary injunction.

While the parties dispute when Plaintiffs could have properly brought their claims, it is undisputed that the guidelines outlining the CAT system had been publicly available and relied upon for years. A long delay in seeking a preliminary injunction relative to the cause of harm should be considered in evaluating a motion for a preliminary injunction. *See Benisek*, 585 U.S at 161. Both the public and those directly affected by the CAT system have prepared for implementation of this system for years. Granting a preliminary injunction would create a "chaotic and disruptive effect," which cuts directly against the purpose of preliminary injunctions in preserving the status quo. *Id*.

V. **CONCLUSION**

A preliminary injunction would be inappropriate in this circumstance due to the factors discussed above. Preliminary injunctions are an "extraordinary remedy" only available when the

moving party has "unequivocally shown the need for its issuance." *Fagin,* 473 F. Supp. 3d at 716 (citing *Valley v. Rapides Par. Sch. Bd.,* 118 F.3d 1047, 1050 (5th Cir. 1997.)). In this case, the factors go even further as to weigh against a preliminary injunction. Therefore, the Court **DENIES** Plaintiffs' Motion.

So **ORDERED** this October 24, 2024.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE