UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ERIK DAVIDSON, *et al.*,<br><br>        Plaintiff,<br><br>    v.<br><br>PAUL S. ATKINS, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, *et al.*,<br><br>        Defendants. | Case No. 6:24-cv-00197-ADA |

### SEC DEFENDANTS' MOTION TO HOLD CASE IN ABEYANCE AND TO STAY DISPOSITIVE-MOTION SCHEDULE PENDING DECISION ON THE MOTION

The SEC Defendants respectfully move the Court to hold this case in abeyance until January 15, 2026, while the SEC engages in ongoing and anticipated agency proceedings that may narrow or substantially affect the issues in the case. The SEC Defendants also respectfully request that the Court suspend the dispositive-motion schedule while it considers whether to hold the case in abeyance. Under that schedule, the Defendants' consolidated renewed motions to dismiss and motions for summary judgment are to be filed by July 17, 2025. Order, ECF No. 115 (May 15, 2025). Plaintiffs oppose this motion, while Defendant Consolidated Audit Trail, LLC does not.

### BACKGROUND

This case concerns the Consolidated Audit Trail ("CAT"), which integrates regulatory data previously available from disparate sources into a single database that the SEC and the self-regulatory organizations ("SROs") it oversees currently rely on to regulate the U.S. securities markets. In July 2012, the SEC adopted Rule 613, which directed the SROs to jointly

1

file a National Market System ("NMS") plan to create, implement, and maintain a consolidated audit trail. Consolidated Audit Trail, 77 Fed. Reg. 45,722 (Aug. 1, 2012). The SEC approved the SROs' proposed CAT NMS Plan in November 2016. Order Approving the NMS Plan for the Consolidated Audit Trail, 81 Fed. Reg. 84,696. Plaintiffs filed this suit challenging Rule 613 on a wide range of constitutional and statutory grounds almost eight years later, in April 2024.

CAT's implementation over the last decade has prompted questions as to whether it strikes an appropriate balance with respect to privacy, data security, and cost, among other matters. A majority of current SEC Commissioners have expressed concerns about CAT's cost, scope, and collection of personal customer information. *See, e.g.*, Exhibit A, Chairman Paul S. Atkins, Prepared Remarks Before SEC Speaks (May 19, 2025), https://tinyurl.com/3cxmwn8w ("Ex. A"); Commissioners Hester M. Peirce & Mark T. Uyeda, Dissenting Statement on Electronic Submission of Certain Materials Under the Securities Exchange Act of 1934 and Amendments Regarding the FOCUS Report (Dec. 16, 2024), https://tinyurl.com/yp4avjrn.

The SEC has taken a number of recent steps in light of those concerns. In February 2025, the SEC provided an exemption from the requirement that broker-dealers and SROs report to CAT personal customer information—name, address, and birth year—for natural persons with social security numbers or tax-payer identification numbers. Order Granting Exemptive Relief, 90 Fed. Reg. 9,642 (Feb. 14, 2025) ("PII Exemption Order"). The Commission is currently considering CAT NMS Plan amendments proposed by the SROs that would go further, prohibiting the reporting of personal customer information to CAT entirely and eliminating all personal customer information stored in CAT. Notice of Filing of Amendment to the National Market System Plan Governing the Consolidated Audit Trail Regarding the Proposed Customer and Account Information System Amendment, 90 Fed. Reg. 12,845,

12,846 (Mar. 19, 2025).[1]  In addition, on May 19, 2025, Chairman Atkins announced that he has instructed the SEC staff "to undertake a comprehensive review of the CAT."  Ex. A at 7.  Among other matters, that comprehensive review will encompass an examination of "the costs of the system" as well as "the reporting requirements and scope of what is collected."  *Id.*

## ARGUMENT

This Court possesses the inherent power to hold a case in abeyance.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  Courts often hold cases involving review of agency actions in abeyance when further agency proceedings may moot or otherwise affect some or all of the issues raised in the case.  *See, e.g.*, *Chlorine Inst., Inc. v. Fed. R.R. Admin*, 718 F.3d 922, 926 (D.C. Cir. 2013) (explaining that the case had been held in abeyance pending agency action); *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 384, 390 (D.C. Cir. 2012) (holding challenge to agency rule in abeyance pending agency rulemaking); *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008) ("Often we issue such orders [holding a case in abeyance] in light of other pending proceedings that may affect the outcome of the case before us.").

The Court should hold this case in abeyance because the SEC's ongoing consideration of the Plan amendments proposed by the SROs and the comprehensive review of CAT recently initiated by Chairman Atkins "carr[y] the prospect of mooting" or substantially altering the analysis for at least some of the issues raised in Plaintiffs' amended complaint.  *Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 472 (D.C. Cir. 1991).  These proceedings could result in material changes to CAT including, among other things, an end to CAT's collection of personal customer information and the removal of such information from CAT, changes to the way

---

[1] Pursuant to SEC Rule 608(b)(2), the SEC must issue an order approving or disapproving the SROs' proposal or institute proceedings to determine whether to approve or disapprove the proposal by June 17, 2025.  17 C.F.R. § 242.608(b)(2).  If the SEC were to institute proceedings, it would then have until September 15, 2025, to issue an order approving or disapproving the proposal.  While that deadline is subject to two potential 60-day extensions, the final deadline would be no later than January 13, 2026, approximately one month after the current dispositive-motion schedule is set to conclude.

3

the SEC accesses customer and trade data, and reductions in the costs of and burdens imposed by CAT.  While Plaintiffs' lawsuit suffers from fatal jurisdictional deficiencies that would not be affected by this ongoing process of reevaluating CAT, if the Court were to conclude that it has jurisdiction, changes to CAT would bear directly on the legal issues this Court would then have to decide.  Holding the case in abeyance would thus conserve judicial resources and the resources of the parties.

Several of the claims asserted by Plaintiffs would be particularly affected by potential changes to CAT.  Plaintiffs' central contention that CAT constitutes an unlawful "mass surveillance program" rests on features that the SEC is currently reconsidering:  its collection of personal customer information directly accessible to the SEC.  Pls.' PI Mot. at 1, ECF No. 25-3.  Plaintiffs distinguish CAT from the SEC's prior sources of regulatory data—which they do not claim to have been unlawful—on the ground that CAT collects "*investor-identifying* information about every trade" that can be used by the SEC directly to link specific investors with specific trades.  Pls.' PI Mot. at 18, ECF No. 25-3 (emphasis in original); *see also id.* (arguing that "CAT is not like the pre-CAT SRO audit trails" because those audit trails "did not collect customer-identifying information"); Pls.' Opp'n at 36, ECF No. 43-1 ("CAT did not merely consolidate preexisting audit trails . . . . Rather, *for the first time*, the CAT collected information identifying the *investors* involved in stock transactions"); *id.* at 47 ("CAT differs from pre-CAT SRO audit trails because it collects investor information and provides that information directly to SEC").  Before CAT, Plaintiffs argue, the SEC's "ability to obtain private citizens' confidential information" was appropriately "constrained" by the blue-sheet process, through which it could obtain personal customer information only by submitting one-off requests to individual broker-dealers.  Amended Compl. ¶ 10; *see also* Pls.' PI Mot. at 20; Pls.' Opp'n at 42.

Plaintiffs have already acknowledged that these allegedly distinguishing features of CAT are "highly relevant" to its claims that CAT exceeds the SEC's statutory authority and is unconstitutional.  Pls.' Opp'n at 37.  In arguing that Rule 613 is unlawful under the major-

4

questions doctrine, for example, Plaintiffs emphasize the allegedly transformative nature of the SEC having direct access to "the name and investment activity of every stock-market investor," as well as the privacy and data security risks associated with collecting and storing large amounts of personally identifiable information and the costs of operating CAT.  Pls.' PI Mot. at 22-26; *see also* Pls.' Opp'n at 46-47.  Similarly, Plaintiffs assert that CAT implicates the Fourth and Fifth Amendments because, they allege, it involves the search and seizure of "personal" investor information and "enables SEC to review private citizens' investment choices."  Amended Compl. ¶¶ 74-78, 168-76, 190-95; *see also* Pls.' PI Mot. at 29 ("Plaintiffs . . . have a reasonable expectation of privacy in their financial information and personal identifying information."); Pls.' Opp'n at 54, 57, 59-60 (emphasizing these features in arguing that a reasonable expectation of privacy exists and that third-party doctrine cases do not apply).

   As Plaintiffs' allegations and arguments acknowledge, the statutory and constitutional arguments in this case turn at least in part on whether CAT continues to incorporate personal customer information directly accessible to the SEC or is instead limited to anonymized transactional data.  But the SEC's access to personal customer information through CAT has already been significantly altered by the recent PII Exemption Order, and the SEC is currently considering further, permanent changes.  As a result of the PII Exemption Order, for many trades going forward, the SEC may not be able to access personal customer information directly through CAT, but may instead have to obtain the information by contacting broker-dealers and requesting it through a process similar to the decades-old blue-sheet process to which plaintiffs do not appear to object.  90 Fed. Reg. at 9,645.  And given the SROs' pending proposal to end CAT's collection and storage of personal customer information entirely and the SEC's comprehensive review of CAT, these aspects of the system could change further still.  *Id.*  Even if these potential changes did not fully resolve Plaintiffs' statutory and constitutional objections, "permitting the administrative process to reach its end can at least solidify or simplify the factual context and narrow the legal issues at play," allow for "more intelligent

resolution of any remaining claims," and avoid "inefficient and unnecessary 'piecemeal review.'" *Am. Petroleum Inst.*, 683 F.3d at 387.

Depending on the outcome of the SEC's comprehensive review, Plaintiffs may need to replead their complaint (to the extent they wish to continue with this suit).  Or Plaintiffs could bring a timely petition for review of any new rulemaking or other SEC order in an appropriate court of appeals pursuant to Section 25 of the Exchange Act, 15 U.S.C. § 78y, thereby obviating the need for this Court to resolve whether it has jurisdiction over Plaintiffs' misdirected and untimely challenge to Rule 613.

For these reasons, the SEC Defendants respectfully request that the Court hold this case in abeyance until January 15, 2026.  If the Court grants this motion and holds the case in abeyance, the SEC Defendants will promptly notify the Court about the status of the agency proceedings at the expiration of this deadline.  The SEC Defendants also request that the Court suspend the dispositive-motion schedule pending resolution of this motion.  In the event the Court denies an abeyance within 14 days of the deadline for the filing of the Defendants' dispositive motions on July 17, 2025, the SEC Defendants respectfully request that the Court provide the Defendants at least 14 days from the date of the denial in which to file their dispositive motions.

DATED:  June 11, 2025    Respectfully submitted,

/s/ Daniel Matro
DANIEL MATRO (*pro hac vice*)
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Phone:  (202) 551-8248
Email:   matrod@sec.gov

JASON J. ROSE
Texas Bar No. 24007946
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Phone:  (817) 978-1408
Email:   rosej@sec.gov

*Counsel for the SEC Defendants*

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Plaintiffs and counsel for Defendant Consolidated Audit Trail, LLC, and that Plaintiffs oppose this motion, while Defendant Consolidated Audit Trail, LLC does not.

/s/ Daniel Matro
Daniel Matro

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas, Waco Division, using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ Daniel Matro
Daniel Matro