# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ERIK DAVIDSON, JOHN RESTIVO & NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,<br><br>    Plaintiffs,<br><br>v.<br><br>PAUL S. ATKINS, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, *et al.*,<br><br>    Defendants. | Civil Action No.<br>6:24-cv-00197-ADA-DTG |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO SEC'S MOTION TO HOLD CASE IN ABEYANCE

Mark D. Siegmund
State Bar Number 24117055
CHERRY JOHNSON SIEGMUND
  JAMES, PLLC
7901 Fish Pond Rd., Suite 200
Waco, TX 76710
Tel: (254) 732-2242
MSiegmund@CJSLAW.com

Margaret A. Little CT303494
Margot J. Cleveland*
Caitlin Moyna**
Christian Clase**
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Tel: (202) 869-5210
Fax: (202) 869-5238
Peggy.Little@ncla.legal
Margot.Cleveland@ncla.legal
*Admitted *Pro Hac Vice*
**Pro Hac Vice forthcoming*
*Counsel for Plaintiffs*

## INTRODUCTION

This Court should reject SEC's latest request for abeyance. ECF 119. SEC's proposed changes—changes released the very day the prior stay expired—do not cure *any* of the Consolidated Audit Trail's (CAT) significant constitutional violations and, in fact, are entirely irrelevant to the claims Plaintiffs brought more than two years ago. SEC has acknowledged precisely how CAT operates to seize investors' private information and further boasts of searching that data without any suspicion of predicate crimes. This conduct represents an outrageous violation of investors' Fourth Amendment rights. *Infra,* at 4-6. Any further abeyance will unreasonably delay vindication of Plaintiffs' vital constitutional rights: Justice delayed is justice denied.

SEC's abeyance request is premised on an indication that it will stop collecting personally identifiable information ("PII"), the deletion of previously collected PII, and its cost-cutting efforts. ECF 119 at 3. But Plaintiffs' claims do not rest on suggestions that SEC will alter its unlawful seizure of PII; nor are they cured by SEC trimming CAT's total costs. SEC lacks statutory authority to create this panopticon. Congress never authorized nor appropriated funds for this unprecedented all-seeing eye. *Nor could Congress do so*. SEC's tinkering with a subset of pernicious and incurable aspects of the CAT does not—and cannot—resolve or even narrow the issues before this Court.

Beyond SEC's disregard for our Constitution's structural limitations on executive authority, the entire CAT regime violates the First, Fourth, and Fifth Amendments. Defendants continually violate investors' Fourth Amendment rights by collecting investor data and—as SEC itself has

admitted—reviewing, analyzing, and using that data to search for crimes.[1] *Infra,* at 6. This two-year-long injury is cognizable regardless of what measures SEC implements going forward. *See e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, *for even minimal periods of time*, unquestionably constitutes *irreparable* injury") (emphasis added). Those Fourth Amendment violations are flagrant, ongoing, and cannot be cured even by killing CAT. A further abeyance would serve no legitimate purpose. Even if Defendants killed the CAT *today*, Plaintiffs would be entitled to a remedy in the form of a Court order directing the destruction of the data collected over the years, or an injunction barring searches, without cause, of any data retained by Defendants. In short, Defendants lack *any* basis to further delay this Court's review.

## ARGUMENT

I.  **SEC Cannot Fix the CAT, as the Program Contravenes Article I, the Major Questions Doctrine, and the First, Fourth, and Fifth Amendments**

SEC's motion seeks an additional six-month abeyance for a "comprehensive rethink" of CAT, suggesting future action may moot Plaintiffs' claims. But the very idea that SEC is entitled to cure its own constitutional violations voluntarily enjoys no support in the law. *See Whitman v. American Tr. Ass'n*, 531 U.S. 457, 473 (2001) ("The idea that an agency can cure an unconstitutionally standardless delegation of power by declining to exercise some of that power seems to us internally contradictory"); *see also Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 216

---

[1] *See* The SEC is Watching You, William P. Barr, Wall Street Journal (April 15, 2024) ("CAT crosses a constitutional red line. … [W]ithout congressional authorization and under the radar of most Americans, the commission is trying to impose it by executive fiat. … [T]he whole point of the Fourth Amendment is to make the government … jump through hoops when it seeks to delve into private affairs. For an agency to argue that it should be able to avoid these hoops to make investigations easier is to assert that it should be exempt from the Fourth Amendment. … CAT's sweep is unprecedented and would take us far down the road toward an Orwellian surveillance state."). https://www.wsj.com/opinion/the-securities-and-exchange-commission-is-watching-you-surveillance-4e782f82?st=TstjeL&reflink=desktopwebshare_permalink.

(2023) (Gorsuch, J. concurring) ("That review is available … *after* an agency completes its work hardly makes up for a day in court *before* an agency says it's done.").

Even if SEC intended to *shut down* CAT, that would not justify delaying a decision on Plaintiffs' claims. *See West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (holding that EPA's intent not "to enforce the Clean Power Plan" had no bearing on whether the Court could consider plaintiff's claims). Administrative agencies cannot avoid judicial review merely by announcing an intent to eventually halt their unconstitutional conduct. *Id*. But here SEC isn't even promising that. Rather, Defendants say they are undertaking a "comprehensive rethink" of CAT, while maintaining CAT's core functionalities.[2] Thus, SEC has committed to nothing—other than maintaining the fundamental constitutional flaws of CAT. And, at best, any changes SEC adopts after grooming CAT for another six months or more will merely lessen Plaintiffs' injuries: it does nothing to vitiate their constitutional claims. *See Cooper v. McBeath*, 11 F.3d 547, 551 (5th Cir. 1994).

The changes SEC has proposed confirm this reality, with the agency merely altering how it collects and stores PII and planning efforts to potentially lower costs. These changes to mere logistics do not address the inherent constitutional defects of CAT, nor does SEC suggest it has any intent to address the fundamental flaws alleged in Plaintiffs' complaint.

SEC still lacks the authority to build or maintain CAT. Pls.' Am. Compl., Count I, ECF 99, at 35.[3] SEC clothed itself with legislative power in order to spy on all investing Americans' trades through its creation of CAT, but agencies have only those powers given to them by Congress and

---

[2] SEC says so itself. *See* Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail, Release No. 34-104586, at 35-36 (Jan. 13, 2026) ("the Proposed Amendment would preserve key elements of the CAT as it currently functions."). Available at https://www.sec.gov/files/rules/sro/nms/2026/34-104586.pdf.
[3] This argument applies with equal force to Count VII, as the count argues that the SEC violated the Administrative Procedure Act by exceeding its statutory authority. *See* ECF 99 at 53.

"enabling legislation is not generally an open book to which an agency [may] add pages and change the plot line." *West Virginia v. EPA*, 597 U.S. 897, 723 (2022) (internal quotations omitted). Moreover, any interpretation of the Exchange Act's general rulemaking provisions that authorizes the CAT violates the Major Questions doctrine. Further, if the Exchange Act could bear SEC's unbounded interpretation—which it cannot—that would necessarily run afoul of the nondelegation doctrine. ECF 99 at 37-39. CAT's collection (or cessation and uncertain disposal) of PII holds no relevance to these constitutional claims. Nor is SEC's lack of authority cured by cutting CAT's costs. Likewise, SEC lowering the costs of CAT does not cure the fact that Congress never appropriated funding for CAT. *Id.* at 39. SEC's decision to force Self-Regulatory Organizations (SROs) and their investors to fund the CAT violates Article I's Appropriation's Clause, the Anti-Deficiency Act, and the Miscellaneous Receipts Act. *See id.*, at 39-41.

       The Eleventh Circuit agrees: Last year, during the previous stay, the Eleventh Circuit held that CAT's funding mechanism—the same one at issue here—was unlawful. *Am. Sec. Ass'n, Citadel Sec. LLC v. SEC,* 147 F.4th 1264, 1277-78 (11th Cir. 2025). The Court reached this conclusion without *any* discussion of PII, perhaps recognizing, as Plaintiffs maintain, PII (and the proposed changes to its collection) is a red herring intended by SEC to delay review of CAT's fundamental constitutional and statutory deficiencies. *See generally*, *id*. The Eleventh Circuit's reasoning also focused on how SEC constructed CAT's funding mechanism—and not on the excessive cost of CAT. *Id*.

       Nor does Count III (Fourth Amendment unlawful search and seizure), Count IV (Fifth Amendment due process and self-incrimination), or Count V (First Amendment associational right), depend on how SEC collects and stores PII.[4] To be sure, these claims are strengthened by

---

[4] The same is true of Count VI, ECF 99 at 53, as the Count argues that Defendants violated the

4

SEC's cavalier treatment of PII. But how PII is collected and where it is stored is beside the point: SEC mandates the collection of information about each trade and that brokers use "a unique CCID, [CAT Customer ID]" as opposed to PII in transferring data to CAT is irrelevant. Whether PII is stored in CAT or anonymized and stored elsewhere (where it, too, could be hacked) is irrelevant because the CCID "identifiers" enable SEC to specifically identify investors. Take SEC at its own word:

> Importantly, the Proposed Amendment would preserve key elements of the CAT as it currently functions. In particular, it would not impact the creation of CCIDs for most CAT customers, which are identifiers that have proven to be an effective means of *uniquely and consistently identifying customers*….This Order generally preserves this benefit of the CCID process, thereby preserving one of the critical innovations of the CAT, the ability to track one Customer's market activity across multiple exchanges.

Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail, Release No. 34-104586, at 35-36 (Jan. 13, 2026) (emphasis added).[5] In other words, CAT's core unconstitutionality and unauthorized mass surveillance is preserved, as SEC retains the ability to uniquely identify individuals. *Id*. Accordingly, SEC's claim that it lacks "direct access" to PII does not address Plaintiffs' claims—Plaintiffs' constitutional rights to do not depend on PII's presence in CAT's central repository. When protected associations are unlawfully demanded by the government, actual disclosure to others is not relevant. *See, e.g.*, *Americans for Prosperity v. Bonta*, 594 U.S. 595, 616 (2021) ("Our cases have said that disclosure requirements can chill association even if there is no disclosure to the general public") (cleaned up & internal quotation marks omitted). Similarly, the proposed changes have no bearing on Plaintiffs' Fourth Amendment claims because it is SEC's retention of the ability to seize and search investors' private

---

Administrative Procedure Act by acting contrary to Plaintiffs' constitutional rights.

5

data without cause that matters, not that SEC added easily cleared digital hurdles for ascertaining an individual's identity. *See* Statements, *Statement of Hester M. Peirce in Response to Release No. 34-88890; File No. S7-13-19* (May 15, 2020) (warning that the CAT is "a comprehensive surveillance tool" that will be used "as an enforcement tool[.]").[6]

## II.     CAT Currently and Continuously Injures Plaintiffs

SEC circumvented Article I's lawmaking and appropriations requirement when it launched CAT in violation of Plaintiffs' civil liberties. Nothing about that has changed. SEC *admits* that it continues to use the CAT. *See, e.g.*, SEC Defs.' Mot. to Dismiss and Opp'n to Pls.' Prelim. Inj. Mot., ECF No. 39, at 15 ("[T]he Consolidated Audit Trail has now been operational for years ... by the end of 2022, it was processing over 400 billion records per day."); Hr'g Tr. Dated October 15, 2024, ECF No. 93, at 17:9-12 ("CAT has been up and running, capturing data for nearly two full years, while plaintiffs and millions of other investors have been trading on a daily basis."). Even worse, CAT's current use is not limited to unlawful *collection* of data; SEC has admitted that CAT has led to identification of targets for enforcement. SEC boasted that it charged an investor identified by "analyz[ing] trading records in the Consolidated Audit Trail (CAT) database." *See* Press Release, U.S. Sec. & Exch. Comm'n, *SEC Charges Florida Man for Manipulative Trading Scheme*, File No. 3-22356 (Dec. 13, 2024).[7] Each day that Plaintiffs are forced to wait for the mere *possibility* of relief, their civil liberties are violated by SEC's unimpeded data surveillance scheme.

---

[6] Available at https://www.sec.gov/newsroom/speeches-statements/peirce-statement-response-release-34-88890-051520. *See also* Remarks of Commissioner Hester M. Pierce to the Science of Blockchain Conference, August 4, 2025 ("In addition to being costly, the CAT disregards everyday investors' privacy interests. Commissioner Uyeda and I consider this to be a tool 'one would expect to find in a dystopian surveillance state.'"), available at https://www.regcompliancewatch.com/sec-commissioner-peirce-grabs-the-cat-by-the-tail.
[7] Available at https://www.sec.gov/enforcement-litigation/administrative-proceedings/33-11340-s.

*Cf. Elrod*, 427 U.S at 373 ("The loss of First Amendment freedoms, *for even minimal periods of time*, unquestionably constitutes *irreparable* injury") (emphasis added). Remediation of this lawless scheme will be more difficult and costly with time. SEC may be betting that someday the CAT will be too big to fail. No court should enable that gamble.

Plaintiffs filed this action nearly two years ago, and no meaningful progress towards redress of their injuries has occurred. Defendants lack *any* legitimate interest in continuing to operate this unconstitutional program. *See State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) ("[T]here is generally no public interest in the perpetuation of unlawful agency action.") (internal quotation omitted). And further delays for Plaintiffs, while Defendants continue to collect and analyze investors' data, are particularly egregious given that Defendants have continued to litigate CAT's lawfulness (or lack thereof) elsewhere. *See Am. Sec. Ass'n*, 147 F.4th at 1277-78.

This Court has an obligation to address and redress unconstitutional conduct when it occurs. *See Brown v. Plata*, 563 U.S. 493, 511 (2011) (holding that courts had a "responsibility" to address a constitutional violation). Plaintiffs also have an interest in litigating their claims "expeditiously[.]" *See United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008) (observing plaintiffs have a vital interest in litigation "proceeding expeditiously"). Indeed, the Fifth Circuit has cautioned courts against overzealously employing stays. *See Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 204 (5th Cir. 1985) ("The granting of indefinite stays should not be a quotidian exercise."); *Hines v. D'Artois*, 531 F.2d 726, 737 (5th Cir. 1976) ("We must always have great respect for a trial court's judicial discretion in the control of its docket, but we cannot abdicate our roles in monitoring that discretion to prevent the ossification of rights which attends inordinate delay."). Plaintiffs continue to be injured by CAT and SEC should be indulged no further.

**III.     Even if Defendants Quit Collecting Personally Identifiable Information, the Information Already Gathered Presents Risks for Plaintiffs**

Regardless of how Defendants choose to handle PII in the future, the threat of data breaches persists as long as CAT stores preexisting PII. As former Attorney General William Barr noted: "It's guaranteed that all this data will end up with our adversaries, likely with the Chinese. … Far more secure agencies have been successfully hacked."[8] SEC's status report does not indicate that PII has been removed from CAT. CAT's central repository still contains a treasure-trove of data with immense value to countless bad actors. And SEC's data protection practices are woefully insufficient to protect investors' data. *See, e.g.*, Liam Vaughan, *The SEC Pinned Its Hack on a Few Hapless Day Traders. The Full Story Is Far More Troubling.*, Bloomberg News (June 6, 2025, 10:00 AM).[9] SEC's purported plan to anonymize PII does nothing to cure the risk Plaintiffs continue to face. Indeed, even if SEC had a Congressional mandate to act, more time to collect and search data is still not defensible given the Fourth Amendment violations identified by former U.S. Attorney General Barr at the outset of this case.[10] Subjecting Plaintiffs to continued risk is intolerable and must cease, not be *perpetuated*.

**IV.     Abeyance Is Inappropriate Given Plaintiffs' Need to Obtain Class Certification and Injunctive Relief**

More than two years ago, Plaintiffs filed this case as a class action lawsuit. In preparation for the lifting of the abeyance, Plaintiffs prepared a Motion to Certify a Class, which will be filed

---

[8] Zach Kessel, *SEC Finalizing a 'Big Brother' Database to Track Americans' Stock Trades in Real Time*, Nat'l Rev. (July 23, 2024, 1:58 PM), https://www.nationalreview.com/news/sec-finalizing-a-big-brother-database-to-track-americans-stock-trades-in-real-time/.

[9] Available at https://www.bloomberg.com/news/features/2025-06-06/how-hack-of-sec-s-edgar-system-exposed-flaws-in-us-financial-security?utm_source=securitiesdocket.beehiiv.com&utm_medium=newsletter&utm_campaign=court-rules-bernstein-litowitz-can-hire-former-sec-chief-litigation-counsel-no-appearance-of-impropriety&_bhlid=c8cbdb9bd819033867765a41c7feb50f3cab26da.

[10] *See* Barr, supra note 1.

shortly. Both the individual Plaintiffs and the prospective class members deserve prompt resolution of their claims, which cannot be achieved should this Court grant Defendants' request for an additional abeyance. Further, given that the Eleventh Circuit has held CAT's funding mechanism unlawful and that Defendants continue to search, without *any* predicate, the private financial data of the investing American public maintained by CAT, Plaintiffs will be filing a renewed Motion for a Preliminary Injunction. Plaintiffs respectfully submit that ruling on those Motions, and then allowing the appellate process to unfold, rather than holding this case in abeyance, is the appropriate—and just—course of action. *See England v. La. Bd. Of Med. Exam'rs*, 375 U.S. 411, 415 (1964) ("When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." (quoting *Wilcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909))); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not").

## CONCLUSION

This Court should deny Defendants' motion for a continued abeyance.

Dated: January 22, 2026

Mark Siegmund
State Bar Number 24117055
CHERRY JOHNSON SIEGMUND
 JAMES, PLLC
7901 Fish Pond Rd., Suite 200
Waco, TX 7671o
Tel: (254) 732-2242
MSiegmund@CJSLAW.com

Respectfully Submitted,

/s/ *Margaret A. Little*
Margaret A. Little CT303494
Margot J. Cleveland*
Caitlin Moyna**
Christian Clase**
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Tel: (202) 869-5210
Fax: (202) 869-5238
Peggy.Little@ncla.legal
Margot.Cleveland@ncla.legal
*Admitted *Pro Hac Vice*
**Pro Hac Vice forthcoming*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas, Waco Division, using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

 /s/ *Margaret A. Little*
Margaret A. Little CT303494