ERIK DAVIDSON, *et al.*,

        Plaintiffs,

    v.

PAUL S. ATKINS, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, *et al.*,

        Defendants.

Case No. 6:24-cv-00197-ADA

## SEC DEFENDANTS' STATUS REPORT AND
## MOTION TO CONTINUE ABEYANCE

Pursuant to this Court's order of February 4, 2026, the SEC Defendants respectfully submit this status report and request that the Court continue to hold this case in abeyance. Plaintiffs raise numerous constitutional and statutory challenges to the Consolidated Audit Trail ("CAT"), a market oversight tool approved by the SEC nearly a decade ago. The Court placed this case in abeyance in July 2025 following the SEC's decision to undertake a comprehensive reassessment of the CAT. As discussed below, the SEC remains actively engaged in its review. The SEC Defendants' previous status report described significant changes the SEC had already made to the CAT that materially affected the claims in the operative complaint. Since its last status report, the SEC has further amended the CAT and has sought public comment on a range of more fundamental changes to the CAT's structure that would bear directly on the legal issues the Court would have to decide if it were to conclude that it has jurisdiction to consider Plaintiffs' claims. The SEC Defendants therefore respectfully request that the Court continue to hold this case in abeyance until January 15, 2027. Defendant Consolidated Audit Trail, LLC supports the motion. Counsel for Plaintiffs stated that

Plaintiffs "oppose any further delay in this case" and "wish to preserve all rights to file a timely response to [the motion] as provided by the federal and local rules."

**BACKGROUND AND RECENT DEVELOPMENTS**

CAT integrates regulatory data previously available from disparate sources into a single database that the SEC and the self-regulatory organizations ("SROs") it oversees currently rely on to regulate the U.S. securities markets. In July 2012, the SEC adopted Rule 613, which directed the SROs to jointly propose a National Market System ("NMS") plan to govern the creation, implementation, and maintenance of a consolidated audit trail. Consolidated Audit Trail, 77 Fed. Reg. 45,722 (Aug. 1, 2012). The SEC approved the SROs' proposed CAT NMS Plan in November 2016. Order Approving the National Market System Plan for the Consolidated Audit Trail, 81 Fed. Reg. 84,696 (Nov. 23, 2016). Plaintiffs filed this suit challenging Rule 613 on a wide range of constitutional and statutory grounds almost eight years later, in April 2024. They filed an amended complaint in January 2025. Plaintiffs seek an injunction that stops the CAT's operation entirely, orders the SEC to abrogate all the SROs' rules related to the CAT, and expunges all data ever gathered by the CAT. Am. Compl. at 56-57, ECF No. 99 (Jan. 13, 2025).

In June 2025, the SEC Defendants moved the Court to hold this case in abeyance while the SEC engaged in proceedings that could narrow or substantially affect the issues in the case. SEC Motion to Hold Case in Abeyance, ECF No. 116 (June 11, 2025) ("First Stay Mot."). The SEC Defendants explained that a majority of the SEC's Commissioners had expressed concerns about CAT's cost, scope, and collection of personal customer information, and that the SEC had recently taken a number of steps in light of such concerns. *Id.* at 2-3. Among other things, the SEC Defendants noted, the SEC's new Chairman had announced that the agency would be undertaking a comprehensive review of the CAT. *Id.* at 3. On July 7, 2025, the Court agreed to hold this case in abeyance until January 15, 2026, and directed the SEC Defendants to provide a status report to the Court on or before that date. Text Order (July 7, 2025).

On January 15, 2026, the SEC Defendants filed a combined status report and motion to continue the abeyance. SEC Defendants' Status Report and Motion to Continue Abeyance, ECF No. 119 (Jan. 15, 2019) ("Second Stay Mot."). That filing described a number of relevant actions the SEC had already taken during the abeyance period. For example, the SEC had just approved amendments proposed by the SROs to end the reporting of personal customer information to the CAT and to remove such previously reported customer information stored in the CAT. Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail, as Modified by Amendment Nos. 1 and 2 and by the Commission, Regarding the Customer and Account Information System, 91 Fed. Reg. 2164 (Jan. 16, 2026) ("CAIS Order"). And the SEC had granted exemptive relief from certain other CAT NMS Plan requirements estimated to reduce the CAT's annual operating costs by more than $20 million. *See* Order Granting Conditional Exemptive Relief, 90 Fed. Reg. 47,853 (Oct. 2, 2025); Order Extending Temporary Conditional Exemptive Relief, 90 Fed. Reg. 35,561 (July 28, 2025). On February 4, 2026, following a hearing on the motion, the Court agreed to continue the abeyance until July 15, 2026, and directed the SEC Defendants to provide a status report to the Court on or before that date. Text Order (Feb. 4, 2026).

In the months following that order, the SEC has continued to take significant actions in connection with its comprehensive review of the CAT. On March 16, 2026, the SEC approved an interim funding model to fund the CAT while it engages in its comprehensive review. Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail, as Modified by the Commission, Regarding Implementation of a Revised Funding Model, 91 Fed. Reg. 13,410 (Mar. 19, 2026) ("2026 Funding Order"). Then, on March 27, 2026, the SEC approved amendments to the CAT to codify and expand exemptive relief previously granted by the SEC, including amendments that implement a spending cap provision. Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail, as Modified by the Commission, To Further Reduce the Costs of the Consolidated Audit Trail, 91 Fed. Reg. 16,284 (Apr. 1, 2026). These

and other cost-savings measures have reduced the CAT's annual budget by more than $100 million since 2024. *See id.* at 16,317-18; 2026 Funding Order, 91 Fed. Reg. at 13,422-23.

Most recently, on April 16, 2026, the SEC issued a release soliciting public comments on a number of issues regarding fundamental components of the CAT as it currently exists. Concept Release on Consolidated Audit Trail and Other Audit Trails and Data Sources, 91 Fed. Reg. 20,945 (Apr. 20, 2026) ("Concept Release"). The SEC's request for comments makes clear that it is considering changes to the CAT's "structure, scope, functionality, and security, including changes that would strike a different balance between privacy considerations and regulatory need." *Id.* at 20,948. Among other fundamental changes, the SEC is considering whether it should "own and operate the CAT itself" and should "us[e] appropriated funds to cover costs with respect to the CAT." *Id.* at 20,954. The comment period ended on June 22, 2026, and the SEC is actively reviewing the input it has received in determining next steps for the CAT.

### ARGUMENT

The Court should continue to hold this case in abeyance. As the SEC Defendants previously explained, courts routinely hold challenges to agency action in abeyance when ongoing or developing agency proceedings may moot or otherwise affect the issues in the case. First Stay Mot. 3. Here, developments during the abeyance period confirm that the program that is the subject of this lawsuit is in flux. It does not make sense for the parties to brief and the Court to resolve complex constitutional and statutory challenges to a system that remains a moving target, especially where, as here, the actual structure of the system is highly relevant to the legal analysis of Plaintiffs' claims, and Plaintiffs seek primarily forward-looking (injunctive and declaratory) relief.

The CAT has already been altered in ways that materially affect the legal claims in Plaintiffs' amended complaint, which dates back to January 2025. From the beginning, Plaintiffs have rooted their claims in the assertion that the CAT poses a greater threat to privacy than prior audit trails, the lawfulness of which Plaintiffs have never disputed. Plaintiffs argued

4

that the CAT marked a significant change from prior practice specifically because it collected "personally identifiable information on investors" that the SEC could access directly and thus use "to track every American's trading activity in real time." Pls.' PI Reply at 1, 5-6, 36, 45, ECF No. 42; *see also* Second Stay Mot. at 4 (collecting similar statements throughout Plaintiffs' filings). Plaintiffs repeatedly asserted that the SEC's ability to access personal customer information directly, rather than having to request it from individual broker dealers, was "highly relevant" to their claims that, unlike prior audit trails, CAT exceeded the SEC's authority and was unconstitutional. *See, e.g.*, Pls.' PI Reply at 37, 46, 47-48 (statutory authority); *id.* at 54, 57, 59-62 (Fourth Amendment); *id.* at 70 (Fifth Amendment); *id.* at 75-77 (First Amendment); *see also* Second Stay Mot. at 5 (additional examples).

But as the Commission explained in the CAIS Order, the "removal of [personally identifying information ("PII")] from [the CAT] will mean regulators will be unable to immediately link transaction data to customer PII, and will instead have to seek Customer identifying information from broker-dealers" through electronic blue-sheet or other ad hoc data requests, just as they had to do before the CAT. 91 Fed. Reg. at 2,174; *see also id.* at 2,188-89. On top of that, the SEC recently sought input on additional reforms to the CAT's "structure, scope, functionality, and security" that would also bear on Plaintiffs' claims. Concept Release, 91 Fed. Reg. at 20,948; *see, e.g.*, Pls.' PI Motion at 23-24, ECF No. 25-3 (arguing magnitude of CAT costs implicates major questions doctrine); Am. Compl. ¶¶ 188-89 (arguing the CAT violates Fifth Amendment based on specific data it collects).

As just one example, plaintiffs' Fourth Amendment claims depend, in part, on investors' reasonable expectations of privacy and any alleged invasion of that privacy, but the recent elimination of PII previously collected by the CAT as well as the Commission's ongoing reconsideration of the entire CAT system may affect the underlying facts and premises surrounding those claims. Plaintiffs' amended complaint also challenges the CAT's funding mechanism, another feature of the system that may be in flux. Plaintiffs contend, for example, that the CAT, as currently structured, violates the Appropriations Clause, as well as the Anti-

deficiency Act and the Miscellaneous Receipts Act, because it is not funded through the congressional appropriations process. *See* Amended Compl. ¶¶ 133-48, 215. But the SEC is in the process of considering whether it should "own and operate the CAT itself" and "include the CAT in its budget." Concept Release, 91 Fed. Reg. at 20,954.

The question is not, as Plaintiffs have previously argued, whether the SEC will change the CAT in a way that resolves all of their objections to the notion of a consolidated audit trail. The question is whether it is appropriate to spend judicial and party resources adjudicating challenges to a specific system when the SEC has already altered—and continues to engage in proceedings that could further alter—that system in ways that at least "partially" moot Plaintiffs' claims, *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008), or significantly affect the Court's analysis of those claims, *see, e.g.*, *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012); *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 909 (11th Cir. 2007).

For these reasons, the SEC Defendants respectfully request that the Court continue to hold this case in abeyance until January 15, 2027.

DATED: July 15, 2026                    Respectfully submitted,

/s/ *Daniel Matro*
DANIEL MATRO (*pro hac vice*)
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Phone: (202) 551-8248
Email: matrod@sec.gov

JASON J. ROSE
Texas Bar No. 24007946
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Phone: (817) 978-1408
Email: rosej@sec.gov

*Counsel for the SEC Defendants*

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for Plaintiffs and counsel for Defendant Consolidated Audit Trail, LLC.  Counsel for Plaintiffs stated that Plaintiffs "oppose any further delay in this case" and "wish to preserve all rights to file a timely response to [this motion] as provided by the federal and local rules."  Defendant Consolidated Audit Trail, LLC supports the motion.

/s/ Daniel Matro
Daniel Matro

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas, Waco Division, using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ Daniel Matro
Daniel Matro