# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

ERIK DAVIDSON, JOHN RESTIVO & NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,

    Plaintiffs,

v.

PAUL S. ATKINS, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, *et al.*,

    Defendants.

Civil Action No.
6:24-cv-00197-ADA-DTG

## PLAINTIFFS' RESPONSE IN OPPOSITION TO SEC'S MOTION TO HOLD CASE IN ABEYANCE

Mark D. Siegmund
State Bar Number 24117055
CHERRY JOHNSON SIEGMUND
  JAMES, PLLC
7901 Fish Pond Rd., Suite 200
Waco, TX 76710
Tel: (254) 732-2242
MSiegmund@CJSLAW.com

Margaret A. Little CT303494
Christian Clase*
Andreia Trifoi*
Caitlin Moyna*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Tel: (202) 869-5210
Fax: (202) 869-5238
Peggy.Little@ncla.legal
*Admitted *Pro Hac Vice*
*Counsel for Plaintiffs*

**INTRODUCTION**

This Court should reject SEC's third request for a six-month abeyance for at least four reasons: 1) the agency's request to suspend proceedings defies logic; 2) it defies both longstanding and newly issued Supreme Court precedent; 3) it implicates the judiciary in ongoing, egregious and unconstitutional seizures that violate the Fourth Amendment; and 4) in the end, it serves no one's interests, least of all that of the government. No prejudice has been or can be credibly asserted by SEC, and no case or factual assertion cited by SEC supports any continuation of what is already extraordinary delay of this case. Indeed, the immeasurable and compounding constitutional, data security, and national security harms weigh entirely in plaintiffs' favor and against further withholding of the judiciary's unflagging duty to address ongoing violations of the civil liberties guaranteed by the Constitution and its structural separation of powers essential to those liberties.

**ARGUMENT**

**I.    The SEC's *Third* Abeyance Request Defies Logic**

The SEC's Consolidated Audit Trail (CAT) seizes daily, for later searches, the private financial records of *every* investing American on a massive scale. The SEC admits, as it must, that this is done without a shred of suspicion of wrongdoing, or even unusual market activity. Last month, the Supreme Court held in *Chatrie v. United States* that the government effectuates a Fourth Amendment search when it collects cell phone location information. *See* No. 25-112, 609 U.S. ___ (2026)). In so holding, the Court significantly limited the scope of the third-party doctrine and expanded the analytical framework it established in *Carpenter v. United States*, 585 U.S. 296 (2018), to *all* types of widespread surveillance schemes carried out through digital means.

CAT's collection of digital investment data violates the Fourth Amendment to an even greater degree. First, people's investment choices and stock transfers reveal a wealth of detail about

their private lives, including their "political, professional, religious, and sexual associations," *see Carpenter*, 585 U.S. at 311 (quoting *United States v. Jones*, 565 U. S. 400, 415 (2012)); *Chatrie,* No. 25-112, 609 U.S. ___, at *20, which goes well beyond mere location data, instead extending into the wealth and  values of Americans. Like the cell phone location information in *Chatrie*, investors have no meaningful choice but to be surveilled when trading on US stock exchanges. An investor cannot be "viewed as sharing private information with third parties"—in this case SEC, CAT LLC, and thousands of others—"which then can be freely passed on to the government" simply by doing the "ordinary things" investors do. *Chatrie,* No. 25-112, 609 U.S. ___, at *28. Indeed, most investors are entirely unaware that the CAT is even collecting this information in the first instance.

Second, *Chatrie* affirmed the Fourth Amendment as an important protection against widespread, indiscriminate, and pervasive government surveillance via digital means, emphasizing that enabling the government to "posses[] a virtual panopticon with which to scrutinize its citizens' activities" creates the Fourth Amendment violation. *Id.* at *21. The CAT is undoubtedly a virtual panopticon functioning as "a blanket subpoena for the sensitive personal and financial information of anyone who … participate[s] in the financial markets." Amicus Br. Cato Inst. Dkt.52-1, at 3.

*Chatrie* also expanded the analytical framework established in *Carpenter*: that the government effectuates a Fourth Amendment search when it uses advanced surveillance technology to gather information that reveals a person's private priorities that would otherwise be impossible to obtain without that technology. *Id.* at *16-18. *Chatrie* explained that, through location information, law enforcement officials can effortlessly "chart" people's daily movements without deciding in advance "who they want to follow and when."  *Id.* at 15. The retrospective nature of location information, the fact that it is easy and cheap to gather, and its ability to "run[]

against everyone" renders its warrantless collection constitutionally suspect. *Id.* at *15-18. And, importantly, in *Chatrie*, it made no difference that this information was anonymized. *Id.* at *6-8.

Just so, the CAT creates an encyclopedic, retrospective database of *everyone*'s investment information without prior suspicion, probable cause, or a warrant. And it allows the government to create this database with little effort and no judicial oversight. *Id.* at *15-18. Under the analytical framework established in *Carpenter* and affirmed in *Chatrie*, the CAT violates the Fourth Amendment and *that* cannot be remedied by SEC's proposed changes to the collection of PII and the purported "anonymization" of the data it collects. The entire CAT scheme is a daily perpetual subpoena that violates the Fourth Amendment and warrants immediate judicial intervention.

Logically, nothing the SEC can do, would render this seize first, search later scheme constitutional. After all, Congress couldn't do it either. There is accordingly no logical basis for the Court to withhold review any longer.

## II. This Third Abeyance Request Defies Controlling Supreme Court Authority and the Fifth Circuit Law

Supreme Court precedent holds that stays must be "kept within the bounds of moderation." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). A third six-month stay exceeds *any* reasonable bounds. As Justice Cardozo explained in *Landis*, all stays must "be spent within reasonable limits" and "once those limits have been reached, the fetters should fall off." *See id.* at 256-257 (noting with disapproval: "Already the proceedings in the District Court have continued more than a year."). Plaintiffs filed suit well over two years ago, and this case has been in abeyance for a year. Unresolved motions have been pending in this case for months or years.

SEC asserts that future agency action, potential mootness, and the agency's ongoing "rethink" of the CAT justify *additional* delay. Yet the motion offers no timeline demonstrating when the agency will conclude its work. Instead, it asks this Court to continue its effectively

*indefinite* delay of the litigation until *the agency* deems the program ready for judicial review. But that delay is inappropriate since the SEC is not committed to eliminating the CAT. *See Limnia, Inc. v. United States Department of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017) (holding that "a voluntary remand" back to an agency "is typically appropriate only when the agency intends to revisit the challenged agency decision on review."). And regardless of how SEC changes the CAT, its central unconstitutional and unlawful aspects will remain. Given that SEC cannot cure the CAT's deficiencies, an eighteen-month delay flatly exceeds the "bounds of moderation." *See Landis*, 299 U.S. at 257. Likewise, SEC's assertion that it has reduced the CAT's budget since 2024 is wholly irrelevant to this case. This case is not about monitoring the ups and downs of CAT spending—it is about whether the CAT is authorized at all and funded by any lawful appropriation!

Moreover, SEC knows it cannot ask for indefinite abeyance. Fifth Circuit precedent counsels strongly against that request. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc*., 761 F.2d 198, 204 (5th Cir. 1985) ("The granting of indefinite stays should not be a quotidian exercise"). So instead, it has sought (and obtained with this Court's approval) indefinite delay through repeated abeyance requests that routinely appear every six months like clockwork. But "the Constitution deals with substance, not shadows." *Cummings v. Missouri,* 71 U.S. 277, 325 (1866). This is in all respects a scheme to secure an indefinite stay. For this reason, this Court should indulge SEC's efforts to delay review no longer.

The SEC's proffered basis (at 4, 6) for its latest abeyance request—a purported sensitivity to "judicial and party resources" expended chasing a "moving target" of the agency's *own* creation—is unpersuasive, ephemeral and wholly manufactured by the agency to delay the dread day its actions will be subject to judicial scrutiny. But SEC's desire to avoid judicial review cannot provide justification for a seemingly indefinite stay of proceedings.

This is especially true given that SEC suffers no meaningful prejudice by litigating Plaintiffs' claims today. Tellingly, SEC offers up no credible claim of prejudice. Indeed, in recent filings in connection with the renewed challenge to the CAT's funding order in the Eleventh Circuit, SEC admits that, "[g]oing forward, regulators will generally have to seek th[e] information from individual broker-dealers through electronic blue-sheet or other ad hoc data requests, as they did pre-CAT." Brief for Respondent at 14, *Am. Sec. Ass'n v. SEC*, No. 26-10936 (11th Cir. July 2, 2026). As Plaintiffs have argued throughout this litigation, SEC has more than sufficient tools to enforce the securities laws.

Additionally, SEC's appeal to judicial economy falls flat when balanced against Plaintiffs' constitutional injury. *See Hines v. D'Artois*, 531 F.2d 726, 737 (5th Cir. 1976) ("We must always have great respect for a trial court's judicial discretion in the control of its docket, but we cannot abdicate our roles in monitoring that discretion to prevent the ossification of rights which attends inordinate delay."). Plaintiffs continue to be irreparably injured due to the CAT. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The same holds true—with the same force—for Fourth Amendment violations. *See U.S. v. Calandra*, 414 U.S. 338, 354 (1974) (observing that the harm of a Fourth Amendment violation "is fully accomplished by the original search without probable cause"). The injury to Plaintiffs increases the longer CAT operates without intervention by this Court. *U.S. v. Maynard*, 615 F.3d 544, 562 (D.C. Cir. 2010) ("Prolonged surveillance reveals types of information not revealed by short-term surveillance.").

Worse, that injury has compounded *daily* for over two years with this Court's express permission, and this Court has *never* explained its rationale for granting SEC's ongoing abeyance requests. Such unexplained abdication of judicial duty may entitle Plaintiffs to mandamus relief.

*See McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) ("The trial court gave no reason for such a protracted stay, nor did it weigh competing interests and maintain an even balance in ordering the stay…") (international quotation marks omitted); *see also Coastal (Bermuda) Ltd.*, 761 F.2d at 204 ("If Coastal's grievance continues unrequited for a significant enough period of time, such may be the circumstances under which a petition for mandamus might be appropriately filed and granted.").

The newest abeyance, if granted by this Court, would place Plaintiffs out of court for eighteen months. The Fifth Circuit has cautioned lower courts against such delay. *See Occidental Chemical Corp. v. Louisiana Pub. Serv. Com'n*, 810 F.3d 299, 307 (5th Cir. 2016) (citing *Hines v. D'Artois*, 531 F.2d 726, 729 (5th Cir. 1976)). Any continued abeyance would constitute an "immoderate" exercise of this Court's discretion. *See McKnight*, 667 F.2d at 479 ("stay orders will be reversed when they are found to be immoderate or of an indefinite duration").

This case is not moot, nor does SEC argue it will be. Mootness is a present and demanding inquiry: "a case 'only becomes moot…when it is impossible for a court to grant any effectual relief whatever to the prevailing party'… As 'long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)). Conspicuously, SEC does not argue that any of Plaintiffs' claims are moot. SEC's Mot. at 4 ("ongoing or developing agency proceedings *may moot* or otherwise affect the issues in the case.") (emphasis added). So, this Court possesses an "obligation" to exercise its jurisdiction. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (observing that federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given them.").

SEC's own motion demonstrates that a live controversy is before this Court. SEC explains

that it has changed CAT's treatment of personally identifiable information. SEC's Mot. at 4-5. In the agency's view, those changes "may affect the underlying facts and premise surrounding" Plaintiffs' Fourth Amendment claims. SEC's Mot. at 5. But the agency does not directly argue the claim is or will be moot, and changing the layers of encryption does not make it moot.

Similarly, SEC suggests that it is "in the process of considering" changes to CAT's structure that implicate Plaintiffs' Appropriations Clause, Anti-Deficiency Act, and Miscellaneous Receipts Act claims. But mere agency representations of purported intent do not moot a case. Indeed, that's never been a meaningful reason to deny review. *See West Virginia v. EPA,* 597 U.S. 697, 719-20 (2022) (observing that "the Government's mootness argument boils down to its representation that EPA has no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule."). Moreover, holding out the possibility someday of seeking an appropriation does not cure the constitutional defect that no such lawful funding has existed for the four years that SEC has been collecting data. SEC and FINRA's comment in the pending administrative review that an appropriation may be necessary and sought is an *admission* that Plaintiffs' claims are both alive and vital to be decided right away before more unconstitutional expenditure and private taxation of Americans continues unabated. As Amicus Competitive Enterprise Institute has noted: "Nothing in the ['34] Act suggests that SEC may compel private parties to raise funds … [for] its own enforcement tools." Amicus of CEI, Dkt. 67-1 at 3. SEC's motion amounts to a request to delay review of a live controversy in *direct defiance* of this Court's obligation to consider valid constitutional claims before it. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (federal courts are obliged to hear and decide cases before them.).

Finally, SEC's motion identifies no authority from this circuit permitting an analogous halt of proceedings. And its out-of-circuit cases are wholly inapposite. *Basardh v. Gates*, 545 F.3d 1068

7

(D.C. Cir. 2008) stayed a parallel proceeding where a habeas action would not only moot the proceeding but strip jurisdiction altogether. *Id*. 1069-70. Here, by contrast, the Supreme Court's recent *Chatrie* decision only solidifies Plaintiffs' inalterable Fourth Amendment claim. Equally unavailing are *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012) (abeyance appropriate when dispute not ripe) and *Sierra Club, Inc. v. Leavitt*, 488 F. 3d 904, 909 (11th Cir. 2007) (abeyance when a court's ability to rule on the appeal is in question). These circumstances are not present here. To Plaintiffs' knowledge, no case demonstrates that an agency may delay proceedings for *eighteen months* because—in the agency's view—it can cure the challenged constitutional defects that are not within the agency's power to cure. This is especially true where *this* circuit has cautioned lower courts against the use of indefinite, ongoing stays. *Supra* at 6.

Judicially authorized delay allows the SEC to operate the CAT—in a manner Plaintiffs contend is unlawful and unconstitutional—wholly insulated from judicial review. Even as the agency commits itself to altering the CAT, and even if SEC completes its "rethink" of the CAT, Plaintiffs are *presently* subjected to unconstitutional agency action in the interim. That is a cognizable injury, and it is one that cannot be remedied *ex post. See Axon Enterprise, Inc., Cochran v. Federal Trade Commission,* 598 U.S. 175, 191 (2023). As the Court explained in *Axon/Cochran,* the harm of "being subjected to unconstitutional agency authority" is "a here-and-now injury" that can be "impossible to remedy" when litigants are denied judicial review. *Id.* at 191. Plaintiffs are injured each day they are subjected to the CAT's indiscriminate vacuuming of data. Given that this matter is not moot and given that Plaintiffs are subjected *daily* to unconstitutional agency action, this Court must give Plaintiffs their day in court.

Third, even if SEC's actions could eventually moot this case (which they cannot), that would not be a legitimate reason to grant SEC an additional abeyance. Regardless of SEC's view

in its motion that "courts routinely hold challenges to agency action in abeyance when…agency proceedings may moot," SEC Mot. at 4, it is *also* a rule that contemplated changes do not foreclose courts' ability to review agency action. *West Virginia,* 597 U.S. at 719-20. Were it any other way, agencies could manipulate the challenged action to obtain the practical payoff of a mootness ruling—indefinite delay and no merits ruling—without ever being required to make the mootness showing required by law. This is the sort of agency abuse and manipulation the voluntary cessation doctrine is intended to prevent. But it's exactly the sort of abuse occurring here, and this Court must not allow it to continue.

To put it bluntly, SEC has hijacked this litigation. Plaintiffs have a right to this Court's resolution of their claims. And this Court has a duty—a "virtually unflagging obligation"—to provide that resolution. *See Colorado River,* 424 U.S. at 817. Today, Plaintiffs have been in court for over two years with no meaningful review of any of their claims. And that's before the resolution of the present abeyance motion. If this Court continues to enable SEC's seizure and cessation of the judicial process, to mandamus relief may be in order. *See Coastal (Bermuda) Ltd.*, 761 F.2d at 204.

## III. The Balance of Equities Strongly Favors Plaintiffs

The agency suffers no prejudice by being required to proceed at this stage. Plaintiffs face both the ongoing constitutional injury and the prospect of security breaches, cyber-attacks, and national security harms. Each of these threats has been underscored by recent events, and provide additional compelling reasons why SEC's motion should be denied. *See* Steve Randall, *Sensitive-Data Lapse at SEC Intensifies Calls to Strip CAT of Retail Investor Identifiers*, InvestmentNews (July 21, 2026), https://www.investmentnews.com/regulation-legal-compliance/sensitive-data-lapse-at-sec-intensifies-calls-to-strip-cat-of-retail-investor-identifiers/267483; Christopher A.

Iacovella, *AI Just Made Every American Investor a National Security Target*, Wash. Times (May 5, 2026) https://www.washingtontimes.com/news/2026/may/5/ai-made-every-american-investor-national-security-target/. CAT's database is "a honeypot for hackers and other bad actors." Amicus Br. Blockchain, Dkt. 58-1 at 4. CAT "fails to satisfy the constitution's bare minimum requirement of reasonableness … [and] make it likely that federal agents will open investigations into countless innocent investors" based on flawed AI. Amicus Br. American Securities Assn. and Attorney General William Barr, Dkt. 63-1, at 4-8.

Continued abeyance serves no one's interests, least of all those of the government. The SEC's notice and comment process to reduce the costs of the CAT and protect or eliminate PII are irrelevant. SEC Commissioner Peirce has said: "No matter how much the CAT's budget is trimmed or how many data fields are pared back, the core reality remains unchanged." SEC Comm'r H. Peirce, Cattywampus Statement on the CAT Concept Release, Apr. 16, 2026. Plaintiffs' pending motions argue that the CAT is both illegal and unconstitutional in its entirety—and not even Congress could authorize this ongoing Fourth Amendment seizure. That fundamental question must be answered first, before more resources are devoted to an unconstitutional scheme. Review now will serve the interests of all parties, the investing American public's and SEC's interests in data security, asset security and our common interest in needless harms to national security. If, as Plaintiffs argue, this whole scheme is unconstitutional, SEC will also benefit from knowing that before expending further resources to tinker with an unredeemable program.

**CONCLUSION**

This Court should deny Defendant SECs' motion for a continued abeyance. Pursuant to an announcement by the Court, this case will soon be reassigned. Plaintiffs request that the new judge evaluate the claims and delays and deny SEC's motion for continued abeyance.

Dated: July 22, 2026

Respectfully Submitted,

Mark Siegmund
State Bar Number 24117055
CHERRY JOHNSON SIEGMUND
  JAMES, PLLC
7901 Fish Pond Rd., Suite 200
Waco, TX 7671o
Tel: (254) 732-2242
MSiegmund@CJSLAW.com

/s/ *Margaret A. Little*
Margaret A. Little CT303494
Christian Clase*
Andreia Trifoi*
Caitlin Moyna*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Tel: (202) 869-5210
Fax: (202) 869-5238
Peggy.Little@ncla.legal
Margot.Cleveland@ncla.legal
*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas, Waco Division, using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Margaret A. Little*
Margaret A. Little CT303494