ERIK DAVIDSON, *et al.*,

        Plaintiffs,

    v.

PAUL S. ATKINS, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, *et al.*,

        Defendants.

Case No. 6:24-cv-00197-ADA

## SEC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CONTINUE ABEYANCE

This Court has "broad discretion to stay an action against a party to promote judicial economy." *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-cv-01082, 2022 WL 23737414, at *1 (W.D. Tex. June 29, 2022); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). And in deciding whether the reasons for a stay "no longer exist or are inappropriate," the Court "retains the same inherent power and discretion it exercised to impose the stay." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 20-1630, 2021 WL 4033072, at *1 (Sept. 3, 2021) (quotation omitted). Plaintiffs fail to identify any change in circumstances that would warrant the immediate resumption of this litigation.

Plaintiffs do not dispute that, during the abeyance period, the SEC has implemented significant changes to the Consolidated Audit Trail ("CAT") that render portions of the operative complaint obsolete. Mot. 3-4. Nor do Plaintiffs dispute that the SEC is in the process of considering fundamental changes to the CAT's structure that "may affect the underlying facts and premises surrounding" many of their constitutional and statutory challenges to that system. Mot. 5; *see* Opp. 7. The pace and scope of the SEC's activity

demonstrate that its effort in reforming the CAT is serious, genuine, and sustained. A time-limited continuation of the abeyance is therefore appropriate and well within the Court's wide discretion in controlling its docket and avoiding use of judicial resources on a moving target. Plaintiffs' contrary arguments lack merit.

**1.** Plaintiffs argue that the abeyance should be lifted because the SEC has not committed to entirely "eliminating the CAT," which, in their view, is the only step that would fully "cure the CAT's deficiencies." Opp. 4. But the grant (or continuation) of a stay does not require a showing that agency proceedings will completely moot the dispute or address every objection. *Contra* Opp. 6-7. Stays are warranted where the other proceeding "will likely 'narrow the issues in the pending case[] and assist in the determination of the questions of law involved.'" *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016) (quoting *Landis*, 299 U.S. at 253); *see also, e.g.*, *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) ("[P]ermitting the administrative process to reach its end can at least solidify or simplify the factual context and narrow the legal issues at play.").

Here, at the very least, ongoing SEC proceedings "carr[y] the prospect of . . . changing the substance [of the program] to be reviewed," *Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 472 (D.C. Cir. 1991), "partially" mooting or otherwise "affect[ing] the outcome of the case," *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008). For example, Plaintiffs claim that the CAT's funding mechanism is unlawful because it is outside the appropriations process. Opp. 7. *But see* Brief for Respondent at 53-54, *Am. Sec. Ass'n v. SEC*, No. 26-10936 (11th Cir. July 2, 2026) ("SEC Funding Br."). The SEC, however, recently requested public comment on whether to "us[e] appropriated funds to cover costs with respect to the CAT." Concept Release on Consolidated Audit Trail and Other Audit Trails and Data Sources, 91 Fed. Reg. 20,945, 20,954 (Apr. 20, 2026). Plaintiffs do not dispute that implementation of that change would "obviate the need to decide" their Appropriation Clause, Anti-Deficiency Act, and Miscellaneous Receipts Act claims. *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022). And while Plaintiffs now insist that the SEC's ongoing efforts to

reduce the CAT's scope and cost, and its elimination of the personally identifiable information ("PII") the CAT previously collected, are "irrelevant" to their Fourth Amendment and major question claims, the arguments they have made from the inception of this case flatly contradict that assertion. *See* Mot. 4-5 (citing examples).

**2.** Plaintiffs further object that the SEC has not announced a "timeline" for concluding its reassessment of the CAT. Opp. 3. Contrary to their assertions, however, the SEC is not seeking an "indefinite abeyance," nor is it relying on a mere hypothetical "possibility" of agency action. Opp. 4, 7. During the previous abeyance, the SEC took multiple concrete actions that bear on the legal issues in this case. *See* Mot. 3-4. Those actions belie plaintiffs' unfounded accusation that the SEC is engaged in "abuse and manipulation" to evade review. Opp. 8-9. The SEC requests an additional six-month abeyance to accommodate its ongoing reform efforts, including potential changes on which it has sought public input. There is ample precedent for abeyances of that duration. *See, e.g.*, *Ctr. for Biological Diversity*, 56 F.4th at 72-73 (citing cases). And granting the extension will not "insulat[e]" the CAT from judicial review. *Contra* Opp. 8. The Court will have the ability to reassess the abeyance in six months, and the "risk of agency abuse" that plaintiffs conjure is thus "not present here." *Am. Petroleum Inst.*, 683 F.3d at 388.

Plaintiffs similarly err in asserting that the Court's obligation to exercise its jurisdiction requires lifting the abeyance. Opp. 6-7. The SEC Defendants do not dispute that if the Court ultimately determines it has jurisdiction, it cannot simply decline to exercise it.[1] But the Court's obligation to exercise its jurisdiction "does not compel [it] to do so within any specified time," and courts "routinely stay [their] hand" in circumstances like those present here. *Ctr. for Biological Diversity*, 56 F.4th at 71; *see also Chavez-DeRemer v. Haslam Props., LLC*, No. 23-1232, 2025 WL 4632826, at *1 (E.D. Pa. Sept. 19, 2025) (granting stay to avoid

---

[1] To be sure, the Court lacks jurisdiction because plaintiffs brought suit in the wrong court at the wrong time. *See* SEC Defs.' Mot. to Dismiss at 15-20, ECF No. 39 (July 12, 2024).

"spend[ing] . . . judicial resources on determining relatively complex legal issues that are currently in flux").

**3.** Any prejudice to Plaintiffs from a six-month extension of the abeyance is minimal. Plaintiffs waited until 2024 to challenge the CAT—years after the rule requiring the CAT's creation was adopted (2012), the order approving the national market system plan governing the CAT was issued (2016), the CAT became operational (2020), and the primary pre-CAT audit trail system was retired (2021). Their claim to be suffering "immeasurable" and "compound[ing] *daily*" harm (Opp. 1, 5 ) cannot be squared with that years-long delay. *See Chavez-DeRemer*, 2025 WL 4632826, at *2 (balance of harms warranted a stay where plaintiff waited years to bring complaint). And it is further undermined by the recent elimination of PII previously collected by the CAT and the reality that broker-dealers reported anonymized trade and order data to the CAT's predecessor audit trails, the lawfulness of which Plaintiffs have never disputed.

Moreover, lifting the stay is "unlikely to either provide Plaintiffs the relief they seek anytime soon or make efficient use of the Court's or the parties resources." *Whitman-Walker*, 2021 WL 4033072, at *2. This Court has already ruled that preliminary relief is unwarranted. Order Denying Preliminary Injunction, ECF No. 92 (Oct. 24, 2024) ("Order Denying PI"). If the stay is lifted, the Court will have to determine whether it has jurisdiction to reach the merits of Plaintiffs' claims, which raise facial challenges to the CAT that Plaintiffs failed to bring in an appropriate court of appeals within sixty days of the 2016 order approving the CAT, as the applicable statute of repose required. 15 U.S.C. 78y(a)(1). And even if the Court were to find jurisdiction, it would then have to decide cross-motions for summary judgment on an array of complex statutory and constitutional issues, followed by a likely appeal. "By that point," the SEC "may well have" implemented further material changes to the CAT's scope, operation, or funding—or all three—in which case "a substantial amount of the parties' and the Court's resources would have been expended and potentially for little gain." *Whitman-Walker*, 2021 WL 4033072, at *3.

Plaintiffs are also mistaken to the extent they suggest the stay should be lifted because the relief they seek would not harm the SEC or the public interest. Opp. 5. As this Court explained in denying a preliminary injunction, "the CAT is critically important to the government and the securities industry as it enables cross-market securities monitoring to detect wrongdoing and protect investors," and "no backup programs are in place to replace" it. Order Denying PI at 6-7; *see also* SEC Funding Br. 46-47, 52-53 (explaining that a consolidated audit trail is "'critical' to protecting the integrity of the national market system").

**4.** Finally, Plaintiffs misunderstand the decision in *Chatrie v. United States*, No. 25-112, 609 U.S. __ (2026), which does not support their position that the Court should decline to extend the abeyance. Like the decision in *Carpenter v. United States*, 585 U.S. 296 (2018), upon which *Chatrie* relied, *Chatrie* examined the Fourth Amendment's application to cell-phone location data, which tracks an individual's physical movements. Slip Op. at 1-2, 13 ("An individual has a reasonable expectation of privacy in records about his cell phone's location."). The Court grounded its decision on the unique nature of such location data, *id.* at 3-4, 12-18, without discussing the Fourth Amendment implications of any other form of data collection. Notably, the Court again retained the third-party doctrine, which provides that individuals lack Fourth Amendment rights in information they voluntarily provide to financial intermediaries, but held, as it did in *Carpenter*, that the doctrine does not apply to cell-phone location information because of the "incomparably revealing" nature of that information and the "indispensable" use of cell phones in modern life. *Id.* at 24-27 (cleaned up) (citing *United States v. Miller*, 425 U.S. 435 (1976)). The CAT does not track the physical location of stock traders at all, let alone in the pervasive way cell phones do for virtually all persons. Thus, *Chatrie* does not reflect a change in the law that would affect the other reasons for continuing the abeyance.

DATED:  July 29, 2026                    Respectfully submitted,

*/s/ Daniel Matro*
DANIEL MATRO (*pro hac vice*)
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Phone:  (202) 551-8248
Email:  matrod@sec.gov

JASON J. ROSE
Texas Bar No. 24007946
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Phone:  (817) 978-1408
Email:  rosej@sec.gov

*Counsel for the SEC Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas, Waco Division, using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.


/s/ Daniel Matro
Daniel Matro